The STATE of Ohio, Appellee,

v.

FIELDS, Appellant.

[Cite as *State v. Fields* (1991), 75 Ohio App.3d 123.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–900132, C–900179.

Decided July 10, 1991.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *Philip R. Cummings,* for appellee.

*D. Shannon Smith,* for appellant.

---

HILDEBRANDT, Judge.

On May 25, 1984, a Hamilton County sheriff's deputy found the body of

Eugene Morgan lying across the seat of his truck,[1] which was parked on Valley Road near the intersection of State Routes 50 and 128 in western Hamilton County, Ohio. Upon initiating an investigation, sheriff's deputies ascertained that Morgan had suffered four gunshot wounds to the head and one gunshot wound to the left shoulder. Five spent .25–caliber shell casings were recovered from the vicinity of the truck. The deputies also recovered a Raven .25–caliber semi-automatic handgun a short distance away.[2] This weapon was subsequently determined to be the instrument that delivered the fatal gunshots to Morgan. Morgan's wallet was recovered from his body. In addition to personal effects, the wallet contained $29.

After the deceased was removed from the truck, the truck was towed to sheriff's headquarters, where it was dusted for fingerprints. Palm prints and fingerprints of Estil Fields, the defendant-appellant ("appellant"), were recovered from the area of the passenger door by Detective Alderucci.[3]

Alderucci interviewed the appellant during the afternoon of May 25, 1984. The detective wanted to eliminate him as a suspect because he was an employee of Morgan. The appellant told Alderucci that he had inspected a motor in the bed of the truck a few days prior to Morgan's death. While Alderucci did not consider the appellant a suspect, he did not tell him that his fingerprints were recovered from the passenger door.[4]

We are able to glean from the record that has been submitted for our review that the appellant, Morgan's wife, Myrtle Morgan, and Norbert Engel were indicted for the aggravated murder of Morgan on October 18, 1984, under common pleas case number B–843648. This indictment followed the grand-jury testimony of Chester Hoover on October 16, 1984.[5] During that testimony, Hoover alleged, *inter alia*, that Myrtle Morgan and Engel paid the appellant to kill Morgan. See State's Exhibit 45. On December 10, 1984, Hoover recanted his grand-jury testimony in a deposition taken by the

---

1. The vehicle, a Ford pickup truck, was registered to Action Refrigeration, a company owned by Morgan. When the vehicle was discovered, its lights were on and the motor was running.

2. The handgun was lying at the base of a tree on the bank of the Great Miami River, which was adjacent to the place where the truck was parked.

3. Detective Alderucci testified that he was able to lift three different latent samples of fingerprints from this same latent print, which, he opined, indicated the latent print contained a great deal of perspiration.

4. Alderucci recovered other, unidentifiable latent prints from the truck.

5. Hoover identified himself to the grand jury as Myrtle Morgan's brother and the appellant's brother-in-law.

Hamilton County prosecutor's office. See State's Exhibit 46.[6] On December 13, 1984, indictment B–843648 was dismissed.

On September 3, 1985, the appellant was again indicted under R.C. 2903.01 for the aggravated murder of Morgan. The first specification to the indictment alleged that the appellant committed the offense for hire. The second specification alleged that the offense was committed while the appellant was in possession of a firearm. The events immediately preceding this indictment will be discussed later in this opinion.

Following a period of discovery and pretrial motions filed almost entirely by the appellant, the cause proceeded to trial on February 8, 1988. However, the case ended in a mistrial because the appellant was not afforded a certain forensic report. In declaring a mistrial, the trial judge determined that there was no intentional misconduct on the part of the state.

The appellant next moved to dismiss the instant indictment on double jeopardy grounds. The motion was denied by the trial court and this court affirmed that ruling in *State v. Fields* (Apr. 28, 1988), Hamilton App. No. C–880188, unreported.[7]

Following a second period of discovery and defense motions, the matter again proceeded to trial on February 5, 1990. Following the guilt phase of the bifurcated proceedings below, the jury found the appellant guilty as charged on February 13, 1990. Thereafter, the jury, after the penalty phase of the trial, returned a verdict in which it determined that the aggravating circumstances did not outweigh the mitigating factors beyond a reasonable doubt and recommended that the appellant receive a life sentence with parole eligibility after serving thirty full years of incarceration. The trial court sentenced the appellant accordingly on March 3, 1990. From that judgment, the appellant brings these timely appeals[8] in which he advances seven assignments of error. We find all assignments of error to be without merit and affirm the judgment of the trial court.

 For his first assignment of error, the appellant asserts that the trial court erred by denying his motion to dismiss because the state failed to bring

---

6. Hoover testified during the proceedings below for the defense and again denied that his grand-jury testimony was true. Hoover claimed that he falsely testified against the three indictees because they had caused him to be arrested. See State's Exhibit 46.

7. The Ohio Supreme Court declined to review our decision.

8. The appellant filed a *pro se* notice of appeal on February 23, 1990, which was assigned this court's case number C–900132. Thereafter, the appellant's counsel filed a notice of appeal which was assigned this court's case number C–900179. We consolidated the appeals for purposes of briefing, argument and decision.

him to trial within the time prescribed by R.C. 2945.71. The assignment fails because the time requirements of R.C. 2945.71 do not apply to retrials. The standard to be applied in such situations is that of reasonableness under the state and federal Constitutions. *State v. Fanning* (1982), 1 Ohio St.3d 19, 21, 1 OBR 57, 58, 437 N.E.2d 583, 585; *State v. Marchioni* (Oct. 2, 1988), Hamilton App. Nos. C–870201, C–870284 and C–870285, unreported, 1988 WL 106143.

 As described above, the appellant was originally brought to trial on the charge *sub judice* on February 8, 1988. That proceeding ended in a mistrial due to what the trial court found to be prosecutorial oversight as it pertained to a discovery matter. Indeed, this court, in reviewing the declaration of the mistrial, observed:

"Defense counsel in the instant case has not identified any specific action of the prosecutor which can be said to be deliberate misconduct rather than an oversight, and the record contains nothing suggestive of prosecutorial misconduct intentionally calculated to cause a mistrial." *State v. Fields, supra,* at 5. In the earlier appeal, the appellant only raised the matter of double jeopardy. The issue of the time requirements of R.C. 2945.71 was not broached.

Subsequent to our disposition of his double-jeopardy claim, the appellant, either *pro se* or through counsel, filed a myriad of motions that the trial court was bound to address prior to the commencement of trial on February 5, 1990. The record indicates that at least fifty such pretrial motions or requests were filed. Additionally, different trial counsel was appointed to represent the appellant at his second trial. The appellant's new counsel requested and, in our opinion, was appropriately given additional time to prepare for trial.

While there was a delay of approximately one year between the declaration of the mistrial and the appellant's retrial, we are not persuaded that such delay was constitutionally unreasonable in light of the matters set forth above. Nor has the appellant demonstrated any prejudice occasioned by the hiatus. See *Marchioni, supra,* at 6 (citing *Barker v. Wingo* [1972], 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101); *State v. Bound* (1975), 43 Ohio App.2d 44, 72 O.O.2d 197, 332 N.E.2d 366. Accordingly, the appellant's first assignment of error is overruled.

In his second assignment of error, the appellant complains that the trial court erred by admitting evidence concerning his other crimes or acts. In his sixth assignment of error, he claims prejudicial error because the trial court denied his request for a hearing concerning the playing of a videotaped confession to the jury after the jury had retired to deliberate the issue of guilt. The appellant's seventh assignment of error alleges that the trial court committed prejudicial error by permitting the jury to review the videotaped

confession in his absence. As our ensuing discussion will make clear, these assignments are closely related and should be addressed simultaneously.

To begin our analysis, we note the appellant did not testify under oath during the proceedings below.[9] Thus, evidence of other crimes committed by the appellant generally would not be admissible at trial unless such evidence was introduced to show, *inter alia,* motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).

The appellant raises several instances where allegedly prejudicial evidence came before the jury. One such instance concerns a videotaped confession by the appellant to law enforcement officers. See State's Exhibit 30. During that statement, the appellant was asked the following question: "And you had [a handgun similar to the murder weapon] hidden someplace and that you were afraid to admit it because you were ahh * * * you were convicted of a felony or something like that?" Upon being notified of the statement by the state, the trial court ordered that the question be eliminated from the jury's consideration. The record discloses that this tape was played during the state's case-in-chief and again, upon the jury's request, after it had retired to deliberate. The court explained what had occurred in the absence of the appellant or his counsel:

"Well, I'll just read into the record what happened. The jury requested that they be allowed to review the videotape. Since the videotape was admitted into evidence[,] it was my feeling that was totally proper for them to do [so] in the jury room.

"And the equipment was here. [The bailiff] stuck the videotape in. Simply ran it for them without comment and he was present and excised the one section of videotape that had been previously ruled improper for them to see and that was all there was to it."

Upon learning of the above, counsel for the appellant moved the court to conduct a hearing so that counsel could inquire of the bailiff whether the reference to the appellant's felony conviction had been excised. The trial court overruled the motion for a hearing. The trial court also denied a motion for a mistrial.

Under these related assignments, the appellant alleges that the record does not affirmatively demonstrate that the reference to his felony conviction was indeed excised. He also challenges as error the trial court's failure to conduct a hearing concerning this matter.

---

9. The appellant did make an unsworn statement during the penalty phase of trial.

As noted above, the court represented that the bailiff edited the felony-conviction reference from the videotape when it was replayed for the jury in the jury room. Further, we are able to determine from the record that the jury had a video player and the exhibits, including State's Exhibit 30 (the video in question), at its disposal in the jury room. In fact, the appellant acknowledges that the jury had unlimited access to the videotape and player in the jury room. Appellant's Brief at 25.[10]

■ Generally, a criminal defendant should be present in every stage of his trial. Crim.R. 43(A). In the case *sub judice*, the appellant was not excluded from a stage of his trial.[11] Rather, the replaying of the videotape constituted a part of the jury's deliberations. Since the videotape was played during the trial and admitted into evidence, it was well within the jury's province to review it along with the other forty-three exhibits that had been admitted into evidence during the trial. We consider the bailiff's presence during the review of the videotape as only a means to ensure that the excised portion of the tape was not replayed.

Next, the appellant cites as error various references by law enforcement officers to his culpability in the deaths of other individuals. These references occurred when law enforcement officers interviewed the appellant concerning the crime *sub judice*. This interview, separate from the videotaped confession, was recorded on an audio cassette after the appellant had waived his *Miranda* rights and after he had agreed to the interview being recorded. See State's Exhibit 29. See, also, T.d. 76, Joint Exhibit B (transcript of interview).

The recording reflects that the appellant initially blamed Morgan's death on Chester Hoover. However, he subsequently admitted shooting Morgan and being paid for the murder by Myrtle Morgan and Norbert Engel.[12] He also confessed to killing one Donald Gibson by giving Gibson a syringe that contained chlorine bleach and a drug of abuse.

---

**10.** The appellant objected to the introduction into evidence of the videotaped confession on grounds that will be discussed hereafter. It can also be discerned that the appellant objected to the jury having access to replay equipment in the jury room, which prompted the trial judge to respond that any replaying of the confession would have to be in open court.

**11.** While the record does not state directly that the appellant was not present at the reviewing of the videotape, it is obvious that neither of his counsel was present. Presumably, the appellant was not present either.

**12.** This confession was given to Deputy Bill Peltier, a Hamilton County sheriff's correction officer. There is evidence in the record that the appellant gave this confession at the urging of two other deputies who sought to play a joke upon Peltier.

The appellant also told Peltier that he was present when Myrtle Morgan committed another offense for which she and the appellant were indicted: the shooting and killing of one James Blackwell.

The entire tape was played for the jury during the state's case-in-chief. Upon cross-examination, the appellant elicited an admission from Peltier that Donald Gibson died of gunshot wounds. Peltier further admitted that the appellant was not convicted of killing Blackwell.

 The appellant cites as prejudicial the prosecutor's question to Peltier, on redirect, as to whether the appellant had been indicted for the death of Blackwell. Peltier answered that he did not know. As discussed above, evidence of other crimes is admissible at trial for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Evid.R. 404(B). While references to the other crimes of which the appellant complains under this assignment may have been damaging to his case, we cannot say that such information was prejudicially injected into the proceedings below. The state's evidence tended to show that the appellant killed Eugene Morgan for hire. The appellant also told Peltier during his statement that he was paid for killing Gibson. Finally, the appellant alleged that Myrtle Morgan killed Blackwell to revenge Blackwell's assault upon her daughter. Further, the appellant told Peltier that he knew, when he accompanied Myrtle Morgan to carry out the task, that Blackwell would be killed.

We conclude that the evidence concerning the crimes of which the appellant complains under these assignments was admissible under Evid.R. 404(B) and the probative value of such evidence outweighs any prejudicial effect the evidence has on the defendant. Accordingly, the appellant's second, sixth and seventh assignments of error are overruled.

In his third assignment of error, the appellant urges that the trial court committed prejudicial error by declaring that the original rulings on his motion to suppress the recorded statements, made prior to the mistrial, were *res judicata.*

Under his fourth assignment of error, the appellant claims prejudicial error in the trial court's rejection of his argument that the statements given to law enforcement officers should have been suppressed on the ground that they were obtained in violation of his Fifth and Sixth Amendment rights. We choose to discuss these related assignments together, finding them to be without merit.

The record discloses that at the time the appellant made the subject statements,[13] he was incarcerated in the Hamilton County Justice Center on an unrelated charge. Further, he was assigned appointed counsel. See Defense Exhibit 5 (motion to suppress).[14] Under these circumstances the appellant's right to counsel, as to the unrelated charge (theft), had attached.

In *Maine v. Moulton* (1985), 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481, Moulton and another defendant had been indicted on theft charges. The co-defendant negotiated a plea with the authorities and agreed to testify against Moulton. Further, the co-defendant agreed to wear a transmitter during a prearranged, noncustodial meeting with Moulton. During the meeting, Moulton made incriminating statements which were monitored by the police. The trial court overruled Moulton's motion to suppress the statements. The state supreme court reversed the conviction and the United States Supreme Court affirmed, observing:

"The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated, whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. * * * However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.*, 474 U.S. at 176, 106 S.Ct. at 487, 88 L.Ed.2d at 496.

Even though the appellant's Sixth Amendment right to counsel had attached on the unrelated theft charge, we conclude that his third and fourth assignments of error must fail because, apart from whether he was entitled to relitigate the motion to suppress, an issue we do not reach, the record is clear that the appellant approached the authorities concerning the instant charge of

---

**13.** The first recorded statement was made by the appellant to Peltier during the early morning hours of August 17, 1987, at the Hamilton County Justice Center. The videotaped statement was given by the appellant to deputies at patrol headquarters during the afternoon of August 17, 1987.

**14.** Despite the court reporter's note, stating that some of the defendant's exhibits were not received into evidence, this document and five other defense exhibits were offered and received.

murder, which was not pending against him at that time. Under the circumstances, the state did not infringe upon either his Sixth Amendment right to counsel or his Fifth Amendment right against self-incrimination.

We recognize the appellant's position that he initiated the conversation with Deputy Peltier at the insistence of two other deputies who wished to play a joke on Peltier. However, we find nothing within his ultimate confession to Peltier, or in the subsequent confession to sheriff's detectives in the video-tape, that was not offered voluntarily, after the appellant had received and waived his *Miranda* rights.

In *State v. Jones* (Nov. 29, 1989), Hamilton App. No. C–880384, unreported, 1989 WL 142771, Jones was arrested on drug-related charges and released. Jones obtained counsel to defend against the charges. Thereafter, Jones was arrested on unrelated drug charges. While being interviewed by the police concerning the second set of offenses, Jones made incriminating statements concerning the earlier drug charges. At trial, these statements were offered by the state after Jones's motion to suppress was overruled, and he was convicted. In affirming that conviction, this court noted:

"Once an accused's Sixth Amendment right to counsel attaches, the state may not knowingly circumvent that right in order to obtain incriminating evidence against him. In the case *sub judice*, appellant's Sixth Amendment right to counsel had attached to the instant charges prior to his arrest on the unrelated charges. After appellant was arrested on the second offense, he was read his *Miranda* rights. At that time, appellant voluntarily waived his right to have counsel present during the interrogation on the second offense. It is clear that the police had a right to question appellant concerning the second offense. The question is whether the police officers, during the otherwise legitimate interrogation, knowingly violated appellant's Sixth Amendment right to counsel with respect to the charges *sub judice*. We find that the record contains insufficient evidence, particularly when viewed from the standpoint of the specific question that gave rise to the incriminating statement, to establish that the police officers knowingly circumvented appellant's Sixth Amendment right to counsel. The trial court did not err in overruling appellant's motion to suppress his statement." *Jones, supra,* at 11–12.

As in *Jones*, there is nothing of record to indicate that the appellant's Fifth and Sixth Amendment rights were knowingly violated by the authorities. The appellant's third and fourth assignments of error are overruled.

In his fifth assignment of error, the appellant claims that the videotaped statement should have been suppressed because certain promises by the authorities rendered it involuntary. The assertion is untenable.

In support of this assignment, the appellant maintains that statements by sheriff's deputies to the effect that they were not going to "burn" him were an assurance by the authorities that he would not risk death in the electric chair if he confessed. See T.d. 76 (first attachment); State's Exhibit 30.

Prior to playing the tape for the jury, Detective Jerry Diersing testified concerning the meaning of the term "burn":

"The word burn, that's the term we use with street people, meaning the drug world and stuff like that, we use that with informants and people that want to give us information.

"We tell them we won't burn them with the person that we're talking about. In other words, we won't go to that person and say this guy told us this information or he snitched on you. That's what we mean we won't burn you."

This testimony is consistent with Diersing's testimony at the suppression hearing held prior to the mistrial.

It is axiomatic that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Based upon our review of the record, we cannot say that the court below erred in believing Diersing's definition of the term "burn" instead of that advanced by the appellant. Accordingly, the court did not err by overruling the appellant's motion to suppress the videotape. The appellant's fifth assignment of error is overruled.

Having passed upon all seven of the appellant's assignments of error and finding each to be without merit, we affirm the judgment of the court of common pleas.

*Judgment affirmed.*

GORMAN, P.J., and SHANNON, J., concur.