The STATE of Ohio, Appellant,

v.

KELLY, Appellee.

[Cite as *State v. Kelly* (1995), 101 Ohio App.3d 700.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14537.

Decided March 15, 1995.

*Mathias H. Heck, Jr.*, Prosecuting Attorney, and *Carley J. Ingram*, Assistant Prosecuting Attorney, for appellant.

*Alan D. Gabel*, for appellee.

---

BROGAN, Judge.

The state of Ohio appeals from the judgment of the trial court which dismissed the indictment against Ricardo Kelly because the state failed to provide Kelly a speedy trial.

On November 2, 1992 Ricardo Kelly was charged by indictment with one count of aggravated trafficking in violation of R.C. 2925.03(A)(1) for allegedly selling crack cocaine to an undercover Dayton Police officer on June 10, 1992. He was arrested on the indictment on February 4, 1994. Counsel moved to dismiss the indictment, alleging speedy trial violations, and the trial court sustained Kelly's motion after an evidentiary hearing.

At the evidentiary hearing Kelly and his mother testified that he had lived with his family at 4504 Prescott Avenue for many years, and that he had no knowledge that he was under indictment. Detective Michael Scarpelli testified for the state that he purchased cocaine from Kelly on June 10, 1992 but did not arrest him that day. Instead Scarpelli took the case directly to grand jury. When the indictment and warrant were returned in November, Scarpelli went to Kelly's house with uniformed officers to arrest him. Someone at the house informed the officers that Kelly was not there. The next day Scarpelli returned to Kelly's house and to 4521 Prescott, the location of the offense, but did not find him at either place. Defendant was arrested on the warrant on February 4, 1994 pursuant to a traffic stop.

The trial court made the following observations in granting the defendant's motion to dismiss:

"In the case before the Court, the State inexplicably delayed the original indictment from June, 1992, to November 2, 1992. The State then failed to arrest or serve the Defendant with the indictment until February 4, 1994. These two actions by the State amount in this Court's opinion to a denial of the Defendant's right to a speedy trial.

"The delay of almost five months between the alleged offense and the issuance of the indictment is clearly too long without some showing of necessity. The State's only explanation is that the practice at the time was to hold onto drug indictments until the end of the quarter and then round up the usual suspects. The State's action of delaying an indictment for such a lengthy period of time for no valid reason, particularly when no arrest has occurred contemporaneously with

the offense, has previously been repudiated by this Court. Clearly, the Defendant's ability to defend against a charge under these conditions is materially jeopardized by such delay since Defendant has no notice that a prosecution is underway."

In a single assignment the state contends the trial court erred in dismissing the indictment on speedy trial grounds. The state correctly observes that the statutory speedy trial provisions of R.C. 2945.71 are applicable only where the accused is arrested or detained in jail under the indictment from which he seeks a discharge. *State ex rel. Hodges v. Coller* (1969), 19 Ohio St.2d 164, 48 O.O.2d 198, 249 N.E.2d 885.

In *State v. Meeker* (1971), 26 Ohio St.2d 9, 55 O.O.2d 5, 268 N.E.2d 589, the Ohio Supreme Court held that the constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment. Justice Leach cited with approval the rationale adopted by the Supreme Court of North Carolina:

"In *State v. Johnson* (1969), 275 N.C. 264, 271, 167 S.E.2d 274, the Supreme Court of North Carolina stated that:

" 'The situation of one against whom a warrant has been issued but not served and that of "the potential defendant"—the suspect who has not been formally charged—is practically the same. * * *

" ' * * * *

" 'We can see little, if any, difference in the dilemma which unreasonable delay creates for the suspect who was belatedly charged, the accused named in a warrant promptly issued but belatedly served, and the indicted defendant whose trial has been unduly postponed. The same considerations which impel prompt action in the one situation are equally critical in the others. * * *'

"In *Johnson*, it was held that where the state had evidence to bring an armed robbery prosecution against a defendant, who was in the state penitentiary, but the state deliberately and unnecessarily delayed issuing a warrant and securing an indictment for a period of four years, defendant was denied his constitutional right to a 'speedy trial' and prosecution. See, also, *Ross v. United States* (C.A.D.C.1965), 349 F.2d 210, and The Right to a Speedy Trial, 20 Stanford L.Rev. 476, 485–493.

"Considering the basic purposes of the constitutional right to a 'speedy trial,' we conclude that such constitutional guarantees are applicable to unjustifiable delays in commencing prosecution as well as to unjustifiable delays after indictment." 26 Ohio St.2d at 16–17, 55 O.O.2d at 9–10, 268 N.E.2d at 594.

*Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, is the current standard for determining whether there has been a deprivation of the Sixth Amendment right to a speedy trial imposed by the Due Process Clause of the Fourteenth Amendment on the states. The factors identified by the United States Supreme Court are: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right, (4) prejudice to the defendant. However, the court cautioned that none of the factors are either "a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." Instead the court held that they were related factors to be considered together with other relevant circumstances.

In *Doggett v. United States* (1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520, the court found that a eight-and-one-half-year delay in arresting an accused from the date of his indictment violated his speedy trial rights as guaranteed by the Sixth Amendment.

The court applied the *Barker* criteria and found that Doggett's failure to cite any specifically demonstrable prejudice did not doom his claim, since excessive delay can compromise a trial's reliability in unidentifiable ways. The court held that presumptive prejudice is part of the mix of relevant *Barker* factors and increases in importance with the length of the delay. The court held that the government's egregious persistence in failing to prosecute Doggett is sufficient to warrant granting relief.

The court found the negligence caused delay six times as long as generally deemed sufficient to trigger judicial review, and the presumption of prejudice is neither extenuated by Doggett's acquiescence, nor persuasively rebutted. Justice Souter wrote the following in *Doggett*:

"Between diligent prosecution and bad faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. It was on this point that the Court of Appeals erred, and on the facts before us, it was reversible error.

"Barker made it clear that 'different weights [are to be] assigned to different reasons' for delay. *Ibid.* Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. *Thus, our toleration of such negligence varies inversely with its protractedness, cf. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and its conse-*

*quent threat to the fairness of the accused's trial.* Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

"To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8½ years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays 'extraordinary.' See *Barker, supra,* 407 U.S. at 533, 92 S.Ct., at 2193 [33 L.Ed.2d at 118–119]. When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, see n. 1, supra, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, e.g., id., at 534–536, 92 S.Ct., at 2194–2195 [33 L.Ed.2d at 119–120] nor persuasively rebutted, the defendant is entitled to relief." (Footnotes omitted; emphasis added.) *Id.* at 657–658, 112 S.Ct. at 2693–2694, 120 L.Ed.2d at 531–532.

In a footnote in *Doggett,* the court noted that depending on the nature of the charges the lower courts have generally found post-accusation delay "presumptively prejudicial" at least as it approaches one year. See 2 LaFave & Israel, Criminal Procedure (1984) 405; *Doggett, supra,* at 652, 112 S.Ct. at 2691, 120 L.Ed.2d at 525, fn. 1.

 In this case the state delayed indicting Kelly for six months after the alleged offense occurred. Since Detective Scarpelli made the alleged purchase of the cocaine in an undercover capacity, some delay in indicting and arresting the defendant is certainly reasonable because the arrest of the defendant would compromise Scarpelli's undercover role.

In *State v. Behymer* (1992), 80 Ohio App.3d 791, 610 N.E.2d 1126, the Clermont County Court of Appeals held that a delay of almost two years between grand jury indictment and service of summons and arrest resulted in a denial of the defendant's speedy trial rights where defendant was residing within county during the delay, and maintained regular contact with law enforcement officials through his employment at a local tavern.

To trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay. *Doggett, supra,* 505 U.S. at 652, 112 S.Ct. at 2690, 120 L.Ed.2d at 525. The delay of fifteen months from the indictment to the arrest is presumptively prejudicial.

The second factor in *Barker* is the reason for the delay. The trial court found that only two attempts were made to arrest the defendant in November 1992 on two consecutive days and on both occasions the attempts were unsuccessful because no one was home at the defendant's residence. The trial court found that the defendant had been living at the address listed on the indictment for the previous thirteen years and the defendant's mother, brother and sister also lived at that location. The trial court found that the diligence of the police in attempting to execute the indictment warrant was "clearly lacking." The court found that no attempts were made to contact the defendant by mail or phone or through other household members of the defendant.

In *Doggett,* the court noted that appellate courts should review trial court determinations of negligence with considerable deference. 505 U.S. at 652, 112 S.Ct. at 2691, 120 L.Ed.2d at 525.

The defendant could not assert his right to a speedy trial during a period of time in which he was unaware that criminal charges were pending. Lastly, the defendant did not testify as to any particular prejudice he suffered by the delay in arresting him. He denied ever being present at the location where the drug transaction allegedly occurred. The trial court found the defendant's ability to defend against the drug charge was materially jeopardized by such delay "since the defendant had no notice that a prosecution is underway." The presumptive prejudice would be the defendant's inability to account for his whereabouts on June 10, 1992 at the time of the alleged crime.

In summary, we find no error in the trial court's determination that the defendant was denied a speedy trial as guaranteed by the United States Constitution. The assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.