### The STATE of Ohio, Appellee,

v.

### ECHOLS, Appellant.

[Cite as *State v. Echols* (2001), 146 Ohio App.3d 81.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000337.

Decided Sept. 14, 2001.

82

84

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee:

*Smith, Guttag & Bolin, Ltd.,* and *Linda Susan Bolin,* for appellant.

SUNDERMANN, Judge.

In 1996, defendant-appellant Lonnie Curtis Echols was indicted on six counts of robbery, six counts of aggravated robbery, and two counts of kidnapping, all of which were accompanied by a specification of a prior first-degree aggravated felony conviction. Following his first jury trial, Echols was found guilty of all counts. For the purposes of sentencing, the trial court merged the robbery counts with the aggravated robbery counts and sentenced Echols to ten to twenty-five years on each aggravated robbery count and on the two kidnapping counts, with the sentences to run consecutively.

On appeal to this court, we reversed the judgment of the trial court and remanded the cause for a new trial. We determined that Echols had been prejudiced by the joinder of the fourteen counts, which related to four separate incidents, because the evidence on one count was not admissible as "other acts" evidence on the other counts pursuant to Evid.R. 404(B), and because the evidence was not "separate and distinct" on each count. We further determined that a one-on-one show-up from the back of a police cruiser was not unfairly suggestive because the witness had provided the police with a description of the alleged perpetrator, and because she had identified Echols from an unchallenged photograph array. Finally, we concluded that the Crim.R. 29 motion for acquittal on the robbery and aggravated robbery charges involving a futon store was properly denied.

On April 10, 2000, Echols was retried on two counts of robbery, two counts of aggravated robbery, and kidnapping in connection with the offenses occurring at a dry-cleaning store and at the futon store. The remaining counts were severed and presumably tried separately. The jury found Echols guilty of one count of robbery in connection with the futon store, but it was unable to reach a verdict on the remaining four counts. Echols was thereafter sentenced to twelve to fifteen years in prison, with twelve years' actual incarceration. Echols appeals his robbery conviction, bringing forth seven assignments of error, none of which we find to be well taken.

In the first assignment, Echols maintains that the trial court erred in denying his Crim.R. 29 motion for acquittal. In the seventh assignment, Echols challenges the weight and sufficiency of the evidence. We consider these assignments in the aggregate.

The relevant inquiry for reviewing the denial of a Crim.R. 29 motion is the same as the inquiry for sufficiency.[1] To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[2] To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3] A new trial should be granted only in exceptional cases where the evidence weighs heavily against conviction.[4]

Echols maintains that Marie Richey's testimony was not sufficient to establish each element of robbery of the Futon store. Echols bases his argument on a comment made by this court in the first appeal:

"At issue in this case is whether there was such a lack of evidence of theft or attempted theft to require acquittal. We agree with Echols that the testimony of the victim [Marie Richey] standing alone was insufficient for reasonable minds to reach different conclusions as to whether an attempted theft had occurred.

---

1. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

2. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

3. See *State v. Thompkins, supra,* at 387, 678 N.E.2d at 546–547.

4. See *id.*

Further, the police officer's testimony was inadmissible hearsay that did not fall within any of the exceptions enumerated by the Ohio Rules of Evidence. Echols, however, did not object to the testimony. Therefore, he waived the error unless it constitutes plain error. We cannot say under these facts, especially where Echols placed an exhibit containing the statement into evidence independently from testimony, that there is plain error." (Citations omitted.)

First, we note that our discussion of Richey's testimony was dicta, and we are in no way bound by it in our present review of the sufficiency of her testimony. Second, Richey's testimony at the second trial was slightly different from her earlier testimony.

Robbery requires proof of an attempt or commission of a theft or flight immediately after the attempt or commission, and the use or threatened use of immediate force against another.[5] Richey testified at the second trial that Echols had brandished a knife and had stated, "Be cool, baby." Unlike her earlier testimony, Richey further testified that she knew that she was in trouble when she realized that Echols "was not there to buy pillows if he had a knife in his hand and was asking [her] to be cool." Given Richey's testimony at the second trial, particularly as it related to whether Echols was attempting to commit a theft, we conclude that sufficient evidence was presented for reasonable minds to conclude that an attempted theft had occurred.

Upon reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of all the witnesses including Richey, we conclude that nothing in the record suggests that the jury clearly lost its way or created a manifest miscarriage of justice when it returned a guilty verdict on one count of robbery. Accordingly, the first and seventh assignments of error are overruled.

In the second assignment, Echols argues that the trial court erred by failing to sever the robberies relating to the dry-cleaning store and the futon store. Echols alleges in his third assignment that he was denied effective assistance of trial counsel because counsel failed to renew his objection to joinder of the counts at trial. We address the assignments together.

Joinder of multiple offenses is permitted pursuant to Crim.R. 8(A). Joinder of offenses is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses.[6] To prevail on a claim of erroneous joinder, the defendant must

---

5.  See former R.C. 2911.02(A).

6.  See *State v. Clifford* (1999), 135 Ohio App.3d 207, 211, 733 N.E.2d 621, 624, citing *State v. Thomas* (1980), 61 Ohio St.2d 223, 15 O.O.3d 234, 400 N.E.2d 401.

# 88

affirmatively demonstrate that (1) his rights were prejudiced by the failure to sever, (2) he provided the trial court with sufficient information to allow it to weigh the benefits of joinder against the defendant's right to a fair trial, and (3) the trial court abused its discretion by refusing to sever the charges for trial given the information in the record.[7]  A defendant is not prejudiced by joinder where the joined offenses are "simple and distinct," or where the evidence for each count would be admissible as evidence of "other acts" with respect to the other counts.[8]

In this case, the trial court severed the charges relating to the futon and the dry-cleaning stores from the remaining charges relating to two other incidents, pursuant to our decision in the first appeal.  Echols did not make or renew a request for severance of the joined counts at any time during trial.  If a motion to sever is not renewed, the issue is waived unless there is plain error.[9]  An alleged error constitutes plain error where the outcome of the trial would clearly have been different if the error had not occurred.[10]  Notice of plain error should be taken only in exceptional cases to avoid a miscarriage of justice.[11]  Having reviewed the record, we hold that no plain error occurred.

And, even if counsel had made and then renewed a request for severance of the joined counts at trial, we are unconvinced that the trial court would have abused its discretion in trying the charges together.  In contrast to our consideration of this matter in the first trial, in which we determined that it was not improbable that the jury had confused the fourteen counts and cumulated evidence of the robberies, the state in this case retried only the counts relating to the futon and dry-cleaning stores, and the evidence concerning those incidents was not intertwined.  The crimes occurred on different dates against different victims.  Each victim described the assailant and identified Echols.  The evidence was direct and uncomplicated, and, at trial, due consideration was given to

7.  See *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668; *State v. Echols* (1998), 128 Ohio App.3d 677, 691–692, 716 N.E.2d 728, 738.

8.  *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293, 298; *State v. Echols, supra,* at 692–693, 716 N.E.2d at 738–739.

9.  See Crim.R. 52(B); *State v. Walker* (1990), 66 Ohio App.3d 518, 522, 585 N.E.2d 848, 851; *State v. Brady* (1988), 48 Ohio App.3d 41, 44, 548 N.E.2d 278, 281.

10.  See *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

11.  See *State v. Long, supra,* at paragraph three of the syllabus.

keeping the evidence of the two incidents separate and distinct. Therefore, we are unconvinced that the jury had difficulty separating the evidence.

In order to prevail on his claim of ineffective assistance of counsel, Echols must show that his counsel's performance fell below an objective standard of reasonableness and that prejudice arose from his counsel's performance.[12] Having already determined that the evidence was direct and uncomplicated and capable of being segregated, we conclude that there was no ineffective assistance of counsel arising from the failure to make or renew a motion for severance. The second and third assignments of error are, therefore, overruled.

Echols maintains in the fourth assignment that the trial court erred in failing to strike in-court identification testimony following an unduly suggestive one-on-one showup outside the Futon store in violation of his due-process rights and his right to counsel. In his fifth assignment, Echols maintains that his defense counsel's performance was deficient because counsel failed to object to the admission of identification evidence by Richey. These assignments are addressed together.

A one-on-one showup near the time of an offense does not necessarily bring about misidentification, and may, under certain circumstances, be used to ensure accuracy.[13] The linchpin to admission of identification testimony is reliability, which is determined from the totality of the circumstances.[14] The factors to be considered in evaluating the likelihood of misidentification include the following: (1) the opportunity of the witness to view the suspect at the time of the offense; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the offense and the confrontation.[15]

The record of the second trial establishes (as it did in the first trial) that, immediately after the robbery, Richey gave the police a description of the alleged robber. The police showed Richey a photograph array containing a photograph of Echols. Richey identified Echols as the man who had pulled a knife on her.

---

12. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

13. See *State v. Madison* (1980), 64 Ohio St.2d 322, 332, 18 O.O.3d 491, 497–498, 415 N.E.2d 272, 278.

14. See *id.* at 331, 18 O.O.3d 491, 497, 415 N.E.2d at 278, quoting *Neil v. Biggers* (1972), 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401.

15. See *id.* at 331–332, 18 O.O.3d 491, 497–498, 415 N.E.2d at 278.

Some time later that day, after having viewed two other suspects in a police car, Richey viewed Echols in the back of a police cruiser. Also, Richey identified Echols at trial. Given the totality of the circumstances, we conclude that, because Richey had an opportunity to view Echols during the robbery, had given the police officers a description of Echols, and had identified Echols from an unchallenged photograph array, the identification evidence was not impermissibly suggestive so as to violate Echols's due-process rights.

■ Moreover, we are unconvinced that the in-court identification should have been excluded because it violated Echols's right to counsel. Echols essentially argues that his Sixth Amendment right to counsel was violated because the showup took place without counsel present. As we explained in our consideration of Echols's first appeal, the right to counsel guaranteed under the Sixth Amendment is premised on the accused's need to have effective representation in his defense and does not attach until he has been indicted or otherwise formally charged with the crime.[16] Moreover, the right is offense-specific.[17] Nothing in the record demonstrates that formal charges relating to the futon store were pending against Echols at the time of the showup. Thus, no Sixth Amendment rights had yet attached with respect to that crime.

Because Echols was not "in custody" at the time of the one-on-one showup so as to invoke his Sixth Amendment right to counsel and because the one-on-one showup was not unduly suggestive, the trial court did not err in permitting the in-court identification testimony. Given that, Echols's claim of ineffective assistance of counsel concerning the failure of counsel to object to the admission of the identification must also fail. Accordingly, we overrule Echols's fourth and fifth assignments of error.

■ In the sixth assignment, Echols maintains that he was denied his constitutional rights to a speedy trial. The case was remanded on June 26, 1998, for a new trial, and Echols was retried on April 10, 2000. While Echols admits that he contributed to the delay in the retrial by filing several motions for continuances, he maintains that the state nevertheless unconstitutionally delayed his retrial by two hundred six days. He alleges the following impermissible time delays in retrying the case: (1) a forty-two-day delay between the date the Supreme Court of Ohio refused to consider the state's appeal and the date a joint entry for continuance was journalized on December 16, 1998; (2) a one-hundred-nine-day delay between the date trial was supposed to commence on February 18, 1999, and the date Echols filed a motion for a continuance on June 7, 1999; and

16. See *State v. Echols, supra,* at 701, 716 N.E.2d at 744–745.

17. See *id.*

(3) a fifty-five-day delay between the date trial was supposed to commence on February 11, 2000, following Echols's two additional motions for continuances and the date of trial on April 10, 2000.

■■■ Ohio has statutory provisions to ensure a speedy trial, such as R.C. 2945.71, which requires that, in felony cases, the accused must be brought to trial within two hundred seventy days following his arrest. As Echols aptly points out, R.C. 2945.71 does not apply to retrials, but it nevertheless serves to provide useful guidelines to evaluate what constitutes a "reasonable time" for constitutional speedy-trial purposes.[18]

■■■ The standard to be applied in cases involving a retrial is that of reasonableness.[19] To determine whether speedy-trial rights were violated by the delay between a mistrial and the commencement of a second trial, it is appropriate to balance the conduct of the prosecution and that of the accused by examining the following: the length of the delay, the reason for the delay, whether the accused has asserted his speedy-trial rights, and any resulting prejudice.[20] Generally, delays over one year are presumptively prejudicial.[21]

Having reviewed the delays in this case, we note that the record reflects several reasons for the delays. First, the one hundred-nine-day delay was primarily a result of the fact that Echols's trial counsel had withdrawn and that new counsel had been appointed in his place. Second, the fifty-five-day delay occurred because the state had requested a continuance in order to secure the appearance of two witnesses (both police officers) who were unavailable on February 11, 2000. Additionally, Echols never made a demand for a speedy trial. While the delay in bringing Echols to trial was substantial, we are not persuaded that the delay was constitutionally unreasonable in view of the numerous motions made by Echols, the appointment of new defense counsel, and the unavailability of witnesses. Accordingly, the sixth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

18. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 21, 1 OBR 57, 58–59, 437 N.E.2d 583, 585.

19. See *id.*; *State v. Fields* (1991), 75 Ohio App.3d 123, 127, 598 N.E.2d 1264, 1266.

20. See *State v. Kelly* (1995), 101 Ohio App.3d 700, 703, 656 N.E.2d 419, 421, citing *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

21. See *State v. Kelly, supra,* at 705, 656 N.E.2d at 422.

HILDEBRANDT, P.J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting.

The majority, unhappy with the result in the first *Echols* case, just ignores it. We had already stated that the victim's testimony was insufficient to prove an attempt to commit theft. Now we change our tune. The law should not be that fickle or that ephemeral.

And the delay of the trial for two hundred six days, while Echols was locked up, was unreasonable. While R.C. 2945.71 does not specifically apply to a retrial, it is a guideline for reasonableness. Though the majority mentions a two-hundred-seventy-day period, the statutory limitation would have actually been ninety days because Echols was incarcerated the entire time. Thus, a reasonable period was exceeded by at least one hundred sixteen days.