[Cite as *State v. Lee*, 2017-Ohio-7377.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160294 |
| | | TRIAL NO. B-1406069 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LAMONT FERNANDO LEE, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 30, 2017


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

Per Curiam.

{¶1}   Following a jury trial, defendant-appellant Lamont Fernando Lee was found guilty of aggravated robbery and robbery.  The trial court merged the robbery charge with the aggravated-robbery charge and sentenced Lee to eight years.  This appeal followed.

### I.    *Background Facts*

{¶2}   Jeremiah Anderson and his wife responded to a Craigslist ad selling two iPhones.  They agreed to meet the seller at an address on Bluelark Drive in Colerain.  Anderson drove with his family to the address and got out of his truck.  His stepdaughter, T.T., watched from the back seat on the driver's side.  Two young men approached Anderson and one pulled out a gun.  He shoved the gun into Anderson's groin area and demanded money.  Anderson gave them the cash he had brought for the iPhones, and then the two assailants ran into a wooded area behind a nearby house.  Anderson instructed his wife to dial 911.  He and his family met the police to complete a police report.  Then, Anderson started driving around the neighborhood slowly, and T.T. saw one of the robbers wearing different clothing in a nearby park.  Anderson drove by the park again to make sure and called the police.  Anderson met the police at a nearby store.

{¶3}   The police brought two suspects to the store separately.  Anderson stated that the first suspect was not involved.  Both Anderson and T.T. identified the second suspect as one of the robbers.  That suspect was Lamont Lee.  Officer Eric Renner read Lee his *Miranda* rights and collected two cell phones in Lee's possession.  Officer Renner gave those phones to Detective David Hubbard.

{¶4} Detective Hubbard interviewed Lee later that day. After obtaining a search warrant for the contents, Detective Hubbard recovered photos of a green iPhone 5C from Lee's phone. He testified that the scratches on the phone in the photo on Lee's phone matched the phone depicted in the Craigslist ad, except for a small mark on the photo that did not appear on the Craigslist phone. Detective Hubbard also found a photo of an unidentified man holding a handgun. Anderson testified that this gun looked similar to the gun used in the robbery. Additionally, Detective Hubbard located a note that had been saved approximately two hours before the robbery. The note appeared to be rap lyrics about robbery and needing money.

{¶5} Lee was indicted in October 2014 for a violation of R.C. 2911.01(A)(1), aggravated robbery, with gun specifications, and for a violation of R.C. 2911.02(A)(2), robbery. Lee's case proceeded to a jury trial in October 2015. At the conclusion of the trial, the jury found Lee guilty of robbery and aggravated robbery, but found he did not have or use a firearm in the commission of the aggravated robbery. The court merged the robbery count with the aggravated-robbery count and imposed an eight-year prison sentence. Lee now appeals.

## II. *The Prosecutor's Use of Irrelevant and Prejudicial Evidence*

{¶6} In his first assignment of error, Lee argues that the trial court improperly admitted a photo and a note from Lee's phone. The photo contained an unidentified individual holding a gun taken on an unidentified date. The note was typed into the "Notes" section of the phone about two hours before Anderson was

3

robbed and included statements about trying to get money and looking in someone's pockets or wallet.

{¶7} Lee first argues that the photograph and rap lyrics lacked probative value. He claims that, even though the photograph was found in his phone, there was no evidence that he had taken the photograph, the person in the photograph was never identified, the gun was never identified as the weapon used in the robbery, and the detective had admitted that the rap song was not evidence of Lee's guilt in the robbery. Lee further claims any probative value this evidence carried was substantially outweighed by the risk of unfair prejudice and inadmissible "other acts" evidence. *See* Evid.R. 403 and 404(B).

{¶8} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial judge." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 108. An appellate court should not disturb a trial court's decision to admit evidence unless it has clearly abused its discretion and the defendant has been materially prejudiced as a result. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 61, quoting *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). An abuse of discretion constitutes more than a mere error of law or judgment; instead, it means that a trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶9} Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Here, the assistant prosecuting attorney asked whether the gun in the photo looked similar

4

to the gun used in the robbery, and Anderson said it did. Immediately before entering that photo, the assistant prosecuting attorney admitted a different photo depicting Lee's accomplice, Caronta Lackey, holding a gun. Anderson testified that that photo appeared to have been taken in the same location as the robbery and included the same gun. The assistant prosecuting attorney then used that testimony to highlight the fact that it was Lee, not Lackey, who had actually used the gun during the robbery. Although the photo of the unidentified man may have had limited probative value, in conjunction with the first photo and witness testimony, it tended to lend credibility to the assistant prosecuting attorney's theory that Lee had access to a gun and possessed a gun during the robbery.

{¶10} Detective Hubbard testified that Lee's phone contained a note seemingly containing rap lyrics, which he read aloud during direct examination. The note included several references to robbery and needing to get money. Detective Hubbard stated that the note was dated October 25, 2014, at 3:45 p.m. After Detective Hubbard read the note to the jury, the assistant prosecuting attorney clarified that the note had been created within two hours before Anderson was robbed. The subject of the note and its temporal proximity to Anderson's robbery is sufficient to demonstrate its probative value.

{¶11} Lee next argues that the photo and note were unfairly prejudicial. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evid.R. 403. The trial court is vested with broad discretion when weighing evidence under Evid.R. 403. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 87. "A reviewing court will not interfere absent a clear abuse of that

discretion." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 171.

{¶12} "Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant." *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990). Relevant evidence may be excluded only when the risk of unfair prejudice, confusion of the issues, or misleading the jury *substantially* outweighs its probative value. Evid.R. 403. Lee argues that the only purpose the photo could have had was to demonstrate that Lee may have associated with individuals who possessed guns and to imply that Lee committed this robbery because he had a photo of someone with a gun on his phone. But at no point did the assistant prosecuting attorney suggest that that is what the photo demonstrates. The photo was found on Lee's personal cellphone, and Anderson stated that the gun looked similar to the gun Lee had used to rob him. Lee contends that the note was prejudicial because it used the word "rob," which the assistant prosecuting attorney used to show that Lee wanted to commit a robbery that day. However, the very nature of the prejudice of which Lee complains–his potential motive–is the same as its probative value.

{¶13} After reviewing the disputed evidence and the record, we cannot say that the trial court's decision to admit the photo and note was arbitrary, unreasonable, or unconscionable.

{¶14} Lee also asserts that the photo and note constitute improper "other acts" evidence. *See* Evid.R. 404(B). However, he did not object to the note at all and thus did not object to the photo on that basis. He has therefore forfeited all but plain error on appeal. *See* Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-

2459, 38 N.E.3d 860, ¶ 22-23.  Lee does not explain how this evidence constitutes impermissible "other acts" evidence. He has therefore failed to meet his burden to demonstrate error, let alone plain error.

{¶15} We overrule the first assignment of error.

### III.     *Prosecutorial Misconduct*

{¶16} In his second assignment of error, Lee contends that the assistant prosecuting attorney engaged in misconduct when he (1) improperly introduced the photograph and note discussed above, (2) led every witness—to the point of testifying himself—and characterized one piece of evidence as "damning" during his direct examination of the detective, and (3) accused defense counsel of coaching witnesses and made other improper statements during closing.  Lee admits that his counsel did not object to this alleged misconduct. Therefore, he must demonstrate plain error.  *See State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 109.  To constitute plain error, an error must be an obvious defect that would clearly, but for the error, have resulted in a different outcome of the trial.  *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 177, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶17} To reverse a conviction based on prosecutorial misconduct, the alleged misconduct must have deprived the defendant of a fair trial.  *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 140; *State v. Neeley*, 143 Ohio App.3d 606, 621, 758 N.E.2d 745 (1st Dist.2001).  This analysis turns on whether the trial was fair, not the prosecutor's culpability.  *Neeley* at 621.  Thus, the impact of the alleged misconduct must be considered in the context of the whole trial.  *Id.*  Further,

a prosecutor has wide latitude in summation to describe what the evidence shows and the reasonable inferences that may be drawn from such evidence. *Id.*

{¶18} We have already determined that the trial court did not abuse its discretion in admitting the photograph and note. Therefore, there can be no prosecutorial misconduct in introducing those pieces of evidence.

{¶19} Lee also argues that the assistant prosecuting attorney committed misconduct when he characterized a piece of evidence as "damning" during a direct examination. However, Lee did not object and has not explained how he was prejudiced. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 264. As a result, he has not demonstrated that the outcome of the trial would have been different but for the use of that term.

{¶20} Lee further contends he was deprived of a fair trial because the assistant prosecuting attorney asked leading questions during the direct examinations of all four state witnesses. Evid.R. 611(C) states that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." The trial court has discretion to permit leading questions on direct examination. *Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, at ¶ 149. However, a prosecutor commits prosecutorial misconduct when leading questions pervade the entire trial in the face of a sustained objection. *See id.* at ¶ 205. Here, the assistant prosecuting attorney led witnesses and testified during examinations. Lee's counsel raised objections to leading twice during the three days of witness testimony, which the court overruled. But because defense counsel failed to object to the allegedly pervasive leading, Lee concedes that he must demonstrate plain error. *See State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d

545 (1968), paragraph three of the syllabus. Lee has not demonstrated that the questioning rose to the level of plain error because there is no reason to believe that improper questioning affected the outcome of the trial.

{¶21} Furthermore, Lee has not analyzed any specific questions or explained how he was prejudiced. *See McKelton* at ¶ 264. As a result, he has not demonstrated that the outcome of the trial would have been different if the assistant prosecuting attorney had not used leading questions.

{¶22} Lee also complains that the assistant prosecuting attorney committed prosecutorial misconduct during his closing argument. Lee's defense hinged a large portion of its argument on Lee's three friends, who provided similar alibi testimony. The assistant prosecuting attorney could properly respond to the defense's argument that Lee had been somewhere else at the time of the crime by challenging the credibility of Lee's friends and the identical nature of their testimony. However, he went too far when he suggested that the reason their testimony had been so similar was because defense counsel had coached them:

> PROSECUTOR: And it's clear each of these stories were rehearsed. What am I supposed to do with these guys, they are his friends. They obviously talked several times with a lawyer. This is where we are. I was with him all day. What am I supposed to say? Just say maybe you're lying, maybe you're not being truthful? We know that he was in the neighborhood. We know he was there.

It is improper to denigrate defense counsel in the jury's presence. *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 304. However, a closing argument must be reviewed in its entirety when determining whether the misconduct was

prejudicial. *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980). A prosecutor is permitted to draw reasonable inferences from the evidence and present those inferences during closing argument. *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001).

{¶23} Our review of both closing arguments convinces us that many of the statements Lee now complains of were fair arguments based on the evidence or responsive to his case theories. Further, the impact of any improper statements was appropriately assuaged by the trial court's instruction to the jury that closing arguments were not evidence. *See Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, at ¶ 211.

{¶24} Thus, most of Lee's claims of prosecutorial misconduct do not involve error. Where the misconduct rose to the level of error, Lee's counsel did not object, and Lee has failed to demonstrate that, but for these errors, the jury's verdicts would have been different. As a result, we overrule Lee's second assignment of error.

### IV. *Ineffective Assistance of Counsel*

{¶25} In his third assignment of error, Lee claims that his trial counsel was ineffective when (1) he failed to object to the state's witness testifying that the gun depicted in the photos was the same gun used in the robbery, (2) his cross-examination elicited incriminating information from Detective Hubbard that supported the state's case, (3) he permitted the assistant prosecuting attorney to lead and testify for his witnesses, (4) he failed to file a motion to suppress the eyewitness identification of Lee, and (5) he failed to object to the improper statements by the

assistant prosecuting attorney in his closing argument. Lee argues that the accumulation of all these errors prejudiced his defense, denying him a fair trial.

{¶26} To prevail on an ineffective-assistance claim, an appellant must demonstrate that his counsel's performance was deficient, and that, in the absence of counsel's errors there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. Our review of counsel's performance must be "highly deferential." *Id.* at 689.

{¶27} *No objection to testimony about the gun in exhibits two and three.* Lee complains that his counsel did not object to testimony indicating that the gun in the photos on his phone had been the same gun that was used in the robbery. Lee does not explain what objection his counsel should have made to exclude this testimony, nor does he describe how this testimony was prejudicial; he only states that his counsel was ineffective for failing to object. Further, the victim never testified that the gun in the photos was the gun used. Anderson first testified that the gun in exhibit two "looks exactly the same, same color, same size" as the one used to rob him. Then he agreed that the gun in exhibit three looked similar to the gun used in the robbery. In fact, when defense counsel cross-examined him, Anderson repeatedly stated that the gun in both pictures looked "fairly" or "pretty" similar to the gun used to rob him, but that he could not say for certain that either were the same gun. The record does not support Lee's assertion that witnesses testified that

11

the exhibits contained the actual gun used in the robbery, and we cannot say that his counsel was ineffective in failing to object.

{¶28} *Defense counsel elicited incriminating evidence.* Lee contends that defense counsel's cross-examination of Detective Hubbard elicited testimony that helped make the state's case against him. He claims that his counsel provided Detective Hubbard the opportunity to testify to what Lee's codefendant had said during his interview, and that he believed Lee had planned the robbery and held the gun that day.

{¶29} On cross-examination, Lee's counsel asked Detective Hubbard if he had any evidence that Lee had planned the robbery. Detective Hubbard answered, "I have had a statement that was given to me about that." The statement Detective Hubbard was referring to was from an interview he had conducted with Lee's codefendant, Caronta Lackey, who was charged separately and pled guilty to the robbery. When the assistant prosecuting attorney objected to the attempt to elicit testimony about the interview, Lee's counsel explained that he was trying to challenge the existence of evidence of complicity. Lee is correct that his counsel afforded Detective Hubbard the opportunity to testify that he believed Lee had planned the robbery and held the gun. However, Lee's counsel also cross-examined Detective Hubbard extensively on his qualifications to conduct an interrogation, the effectiveness of his interrogation and investigation, the credibility of Lackey and the evidence against Lee, and the possibility of the involvement of another individual, Raymond Minnifield.

{¶30} "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v.*

*Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. We are not persuaded that Lee's counsel was ineffective for the decisions he made while conducting cross-examination.

{¶31} *Failure to object to assistant prosecuting attorney's leading questions.* We are not persuaded that Lee's counsel's conduct was ineffective because he did not object to the assistant prosecuting attorney's use of leading questions. A review of the record demonstrates that the assistant prosecuting attorney stepped beyond the line of appropriate use of leading questions. Lee is correct that the assistant prosecuting attorney essentially testified for the state's witnesses— including Anderson and his daughter. We are troubled by his use of his own testimony to make the case against Lee under the guise of direct examinations. However, whether to permit leading questions on direct examination is within the trial court's discretion. *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946 (2001) (holding that failure to object to excessive leading questions by the state during direct examination did not constitute ineffective assistance of counsel). In spite of this misconduct, each witness provided consistent and certain testimony, and the overwhelming evidence against Lee demonstrates that there is not a reasonable probability of a different result had counsel objected to the improper use of leading questions. *See id.*

{¶32} *Failure to file a motion to suppress.* Next, Lee argues that his counsel was ineffective because he did not file a motion to suppress the "show up" identification. Lee asserts that the identification did not follow procedure. However, he does not explain which procedural requirements were lacking. Failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record

establishes that the motion would have been granted. *In re M.E.*, 1st Dist. Hamilton No. C-140586, 2015-Ohio-3663, ¶ 7.

{¶33} Anderson testified that the robbers ran between yards toward a wooded area after the robbery. He and his wife had both called 911. After they talked to the police in person, Anderson started driving around the neighborhood at about three m.p.h. T.T. saw the gunman in a nearby park. Anderson drove around the block to make sure it was the gunman, who was now wearing different clothing. This occurred less than 30 minutes after they had talked to the police the first time. Anderson then called the police again and reported that he was 100 percent sure he had located the gunman.

{¶34} The police met Anderson at a nearby store. The police brought one young man to Anderson, which Anderson said was not the perpetrator. Then, the police brought Lee over to Anderson. When the police took Lee out of the police cruiser, Anderson immediately began walking toward the cruiser, pointing at Lee, and saying that Lee was the person that had robbed him at gunpoint. Officer Renner asked Anderson if he was positive that Lee was the robber and Anderson responded, "Absolutely." T.T. saw Lee sitting in the back of the police cruiser. The officers asked her twice whether Lee was the robber and both times she said, "Yes."

{¶35} Detective Hubbard testified that this procedure had not been a "show up" identification. He explained that this situation had been different because a victim actually identified Lee as the robber independent of police involvement. He stated that because T.T. and Anderson had already positively identified Lee as the robber when they saw him in the park, Officer Renner was merely verifying that the individual in custody was the individual that they had previously identified as the

robber. Officer Renner, however, did characterize this process as a "show up" identification.

{¶36} The question of whether a "one-on-one show up" identification violates due process hinges on whether there was a "very substantial likelihood of misidentification" based on the totality of the circumstances. *State v. Madison*, 64 Ohio St.2d 322, 331, 415 N.E.2d 272 (1980); *see State v. Ward*, 1st. Dist. Hamilton No. C-140721, 2015-Ohio-2260, ¶ 17-18. The factors the court should consider in determining the likelihood of misidentification include (1) the opportunity of the witness to view the suspect at the time of the offense, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the suspect, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the offense and the confrontation. *Madison* at 331-332; *State v. Echols*, 146 Ohio App.3d 81, 89, 765 N.E.2d 379 (1st Dist.2001).

{¶37} Anderson was in close proximity to the robbers, and T.T. watched the robbery unfold from Anderson's nearby truck. T.T. testified that she had remembered Lee's face and identified him in the park within 30 minutes. When T.T. saw Lee in the park, Anderson drove by again so that they could be certain. Both Anderson and T.T. identified Lee with certainty. Anderson even told the officers that the first individual they brought had not been one of the robbers. After considering these factors we cannot conclude that the identification was so flawed as to create a "substantial likelihood of misidentification" based on the totality of the circumstances. *See id.* Thus, even if this procedure qualified as a "show up" identification, Lee's counsel was not ineffective for failing to file a motion to suppress

the identification.  *See In re M.E.*, 1st Dist. Hamilton No. C-140586, 2015-Ohio-3663, at ¶ 7.

{¶38}  *Improper statements made by assistant prosecuting attorney during closing arguments.*  The assistant prosecuting attorney's improper remarks denigrating defense counsel and suggesting that defense counsel had coached the witnesses went beyond fair comment and rose to the level of prosecutorial misconduct.  However, we have already explained that Lee has not demonstrated that he was prejudiced by this misconduct. Further, "[a] reasonable attorney may decide not to interrupt his adversary's argument as a matter of strategy."  *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 42.  Because Lee has not demonstrated prejudice, he cannot demonstrate that the outcome of the trial would have been different had his counsel objected.

{¶39}  Therefore, we cannot say that counsel's representation fell below an objective standard of reasonable representation.  *See Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, at 687-688; *Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, at 380.  We overrule the third assignment of error.

### V.  *Weight and Sufficiency of the Evidence*

{¶40}  In his third assignment of error, Lee challenges the weight and sufficiency of the evidence upon which his aggravated-robbery conviction was based.[1]

{¶41}  In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any

---

[1] Lee contends that the state failed to prove that he committed aggravated robbery and robbery. Because the robbery count was merged with the aggravated-robbery count, he was not convicted of robbery and we address only his conviction for aggravated robbery.

rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶42}   The aggravated-robbery statute, R.C. 2911.01(A)(1), provides:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

In this case, the jury was entitled to disbelieve Lee's alibi witnesses and to believe Anderson's and T.T.'s testimony that Lee had participated in the robbery. As a result, Lee's conviction was not against the manifest weight of the evidence and was supported by sufficient evidence. We overrule the fourth assignment of error.

### VI.   *Motion for Acquittal*

{¶43}   In his fifth assignment of error, Lee contends the trial court erred by overruling his motion for acquittal after the verdict, pursuant to Crim.R. 29. Lee

17

argues that the jury returned inconsistent verdicts when it found him guilty of aggravated robbery, but not guilty of the accompanying firearm specification. The conviction on a principal charge and acquittal on a specification for identical behavior is not invalid. *State v. Allen*, 1st Dist. Hamilton No. C-060239, 2006-Ohio-6822, ¶ 32, citing *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976), paragraph three of the syllabus, *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978). Here, the jury was instructed to consider the aggravated-robbery charge separately from the corresponding specifications. We cannot say why the jury returned its verdict in this way, but such a result does not mean the jury was not convinced that Lee was guilty of aggravated robbery.

{¶44} We overrule Lee's fifth assignment of error.

## VII. *Sentencing*

{¶45} In his sixth assignment of error, Lee argues that his sentence is contrary to law because the trial court failed to consider the purposes and principles of sentencing. Under R.C. 2953.08(G)(2), this court may vacate or modify a sentence only if we clearly and convincingly find that the record does not support the mandatory sentencing findings, or that the sentence is otherwise contrary to law. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶46} Lee complains that his sentence is contrary to law because the trial court failed to consider the purposes and principles of sentencing, and his eight-year sentence was two years more than the sentence given his codefendant, who received an aggregate term of six years for this robbery and two subsequent robberies.

{¶47} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). In sentencing a felony offender, a court must consider these purposes, as well as the seriousness and recidivism factors set forth in R.C. 2929.12. R.C. 2929.12(A).

{¶48} Here, Lee's sentence for the aggravated robbery fell within the statutory range for a first-degree felony. R.C. 2929.14(A)(1). The trial court explicitly considered the purposes of felony sentencing detailed in R.C. 2929.11(A) and the seriousness of Lee's offense. The court also considered that Lee had been on community control for a theft conviction when he was arrested for this offense. It reviewed Lee's juvenile record, which included multiple adjudications for burglary, theft, delinquency, criminal trespass, criminal damaging, and obstructing official business. The court also considered Lee's codefendant's sentence and the fact that Lackey had admitted to criminal conduct. Lee's sentence is not contrary to law.

{¶49} Finally, Lee complains that the trial court failed to notify him that he was required to submit a DNA specimen and of the consequences for failing to comply. This court has previously held that the failure to provide this notification is harmless error. *State v. Taylor*, 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 6. Therefore, we overrule Lee's sixth assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J., MYERS** and **GORMAN, JJ.**

ROBERT GORMAN, retired, from the First Appellate District, sitting by assignment.

**Please note:**

The court has recorded its own entry on the date of the release of this opinion.