[Cite as *State v. Jackson*, 2019-Ohio-1697.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO.  1-18-38

      v.

PARIS A. JACKSON,

                                         **O P I N I O N**

      DEFENDANT-APPELLANT.

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2018 0047**

**Judgment Affirmed**

**Date of Decision:  May 6, 2019**

---

**APPEARANCES:**

    *Reed D. Searcy* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Paris Jackson ("Jackson"), brings this appeal from the July 12, 2018, judgment of the Allen County Common Pleas Court sentencing him to an aggregate nine-year prison term after Jackson was convicted in a bench trial of Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree with an accompanying three-year firearm specification pursuant to R.C. 2941.145(A), Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, and Improperly Handling a Firearm in a Motor Vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree. On appeal, Jackson argues that there was insufficient evidence presented to convict him, and that his convictions were against the manifest weight of the evidence.

*Procedural History*

{¶2} On March 15, 2018, Jackson was indicted for Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, with an accompanying three-year firearm specification pursuant to R.C. 2941.145(A), Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree, and Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree. It was alleged that on February 1, 2018, Jackson received a ride from Kristina Owens in her vehicle to a parking lot behind the Fourth Street apartments in Lima in order to purchase marijuana. After

arriving at the lot and meeting the purported "dealer," Jackson got into an argument with the dealer and Jackson then allegedly fired two bullets at the dealer from a firearm he had concealed either in his pants or in his pocket. Owens did not see the firearm when Jackson got into her vehicle. One of the bullets Jackson fired struck the windshield of Owens' vehicle. The "dealer" subsequently left the parking lot, as did Owens and Jackson. Jackson pled not guilty to the charges against him.

{¶3} On May 29, 2018, Jackson's case proceeded to a bench trial. The State presented the testimony of four witnesses, including Owens, who said she saw Jackson shoot at the dealer she called "J" or "Jason." In addition, the State introduced fourteen exhibits into evidence, along with a video of the alleged altercation from nearby apartment surveillance cameras. Jackson cross-examined the State's witnesses and challenged Owens' testimony based on inconsistent statements she had made previously to law enforcement and at a preliminary hearing.

{¶4} At the conclusion of the State's evidence, Jackson made a Crim.R. 29 motion for acquittal, which was denied. He then rested his case without presenting any further evidence, and renewed his motion for acquittal, which was again denied. The parties proceeded to closing arguments, and then the trial court recessed to consider the matter. When court reconvened, the trial court found Jackson guilty of all three counts against him and the firearm specification.

{¶5} On July 11, 2018, the case proceeded to sentencing. Jackson was ordered to serve a six-year prison term on the Felonious Assault conviction, consecutive to a three-year mandatory prison term for the firearm specification. He was ordered to serve twelve months in prison on the Carrying a Concealed Weapon conviction, and twelve months in prison on the Improperly Handling a Firearm in a Motor Vehicle conviction. The latter two charges were ordered to be served concurrent with each other, and concurrent to the other charges, for an aggregate nine-year prison term.

{¶6} A judgment entry memorializing Jackson's sentence was filed July 12, 2018. It is from this judgment that Jackson appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in finding appellant guilty as there was not a sufficient amount of evidence for the trial court to find that the State had established all of the elements of each charge and specification contained in the indictment beyond a reasonable doubt.**

**Assignment of Error No. 2**
**The trial court's decision finding appellant guilty on all counts contained in the indictment was against the manifest weight of the evidence.**

{¶7} As both assignments of error deal with a discussion of the evidence, we will address them together.

*First and Second Assignments of Error*

{¶8} In Jackson's first assignment of error, he argues there was insufficient evidence presented to convict him. In his second assignment of error, he argues that his convictions were against the manifest weight of the evidence.

Standard of Review

{¶9} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶10} By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶11}** Nevertheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Controlling Statutes

**{¶12}** In this case, Jackson was convicted of Felonious Assault in violation of R.C. 2903.11(A)(2), which reads, "No person shall knowingly do either of the following * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon[.]" The Felonious Assault charge carried a firearm specification pursuant to R.C. 2941.145(A), which reads, in pertinent part, that a mandatory three-year prison term may be imposed if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

**{¶13}** Jackson was also convicted of Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2), which reads, "No person shall knowingly carry or

have, concealed on the person's person or concealed ready at hand, any of the following: * * * A handgun other than a dangerous ordnance[.]"

**{¶14}** Finally, Jackson was convicted of Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B), which reads, "(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

Evidence Presented

**{¶15}** At trial, the State presented the testimony of Kristina Owens, who indicated that on the afternoon of February 1, 2018, she was driving her silver Hyundai Sonata in Lima when she saw Jackson out walking and Jackson asked her for a ride.[1] Owens testified that Jackson was wearing a blue and white jacket, but she did not see Jackson carrying a firearm when he got into her car. Jackson asked if Owens knew how to acquire marijuana, and Owens indicated that she called a man named "J" or "Jason" to procure the marijuana for Jackson. Owens took Jackson to meet Jason in the parking lot of apartments behind Fourth Street in Lima.

**{¶16}** Owens testified that she drove to the designated parking lot to meet Jason and that Jason arrived in an SUV. Owens testified that Jackson got out of her

---

[1] Owens was not the first witness who testified for the State; however, to more easily understand the narrative, we present her testimony first.

passenger seat and that Jackson began arguing with Jason outside the vehicles. Owens testified that at some point, Jackson pulled out a gun that was either in his pocket or in his pants, and that he fired two shots at Jason, one of which struck Owens' windshield. Owens testified that after the shots were fired Jason got back into his SUV and drove off while Jackson got into Owens' vehicle and they left. Owens indicated that she dropped Jackson off on a nearby street.

{¶17} On cross-examination, Owens acknowledged that she had initially testified in a preliminary hearing that she did not see who shot at whom, and that she thought Jason might have had a gun at the scene. She also testified that during an initial interview with a detective she stated that she did not think Jackson was specifically shooting *at* Jason. In addition, she testified that during an earlier statement she indicated she had not really seen what happened. However, Owens emphasized at trial that she did actually see Jackson point a gun right at Jason and pull the trigger.

{¶18} The State also presented the testimony of Patrolman Adrian Ramirez, who responded to the area of the Fourth Street apartments on a call of shots fired shortly after 3 p.m. on the date of the incident. Although the vehicles involved in the altercation were gone, Patrolman Ramirez was able to acquire security footage from the manager of the nearby apartment complex.

{¶19} The footage, which was introduced into evidence, showed two angles of the parking lot, revealing an individual in a blue jacket who had exited Owens' vehicle—Jackson—and an individual in a yellow shirt who had exited the SUV—Jason.[2] At one point in the video, Jackson can be seen pointing what could be a weapon at Jason, but the camera is too distant for it to be observed. At a certain point, Jason is also pointing at Jackson, but it is similarly unclear if he has a weapon in his hand. Notably, testimony indicated that the footage skipped at certain parts because the cameras only recorded when sufficient movement was occurring to initiate the motion capturing.

{¶20} Patrolman Ramirez testified that he was also involved with locating Owens in her silver Hyundai Sonata in the days following the incident. At the time she was located, Owens was driving her vehicle and Jackson was again in the passenger seat, wearing a blue coat matching the coat in the video of the incident.

{¶21} The State also presented the testimony of Patrolman Stephen Torres who went to the parking lot where the shooting occurred. Patrolman Torres found two spent 9mm shell casings at the scene three to five feet apart from each other in the area where the vehicles had been on the video. Patrolman Torres testified that although both casings were 9mm shells, they were from different manufacturers.

---

[2] The individual Owens claimed was "Jason" was initially wearing something over his yellow shirt but he removed it.

**{¶22}** Finally, the State called Detective Steven Stechschulte of the Lima Police Department. Detective Stechschulte testified that the area where the shooting occurred was a high crime area, and that he had investigated crimes there before, including shootings. He also testified that it was not unusual to find different brands of the same caliber ammunition in the same firearm, and that he had seen it often in various cases.

Sufficiency of the Evidence Regarding Felonious Assault

**{¶23}** Jackson argues that there was insufficient evidence to establish that he possessed a firearm at the scene of the incident, let alone that he knowingly committed an overt act towards an assault on "Jason." He argues that the shell casings found at the scene were mismatched, could have been from a prior crime in such a high crime area, and that there was no testing done on Jackson's jacket for gun residue.

**{¶24}** Jackson also claims that the act of merely pointing a deadly weapon at another individual without additional evidence is insufficient to convict a defendant of Felonious Assault under R.C. 2903.11(A)(2) pursuant to *State v. Brooks*, 44 Ohio St.3d 185, 192 (1989). Contrary to Jackson's argument, Owens testified that Jackson pointed the firearm at Jason *and* fired it at him.

> **Q. * * * Did you ever see Paris Jackson point a firearm at this other individual and pull the trigger?**
>
> **A. Yes.**

**Q. He pointed right at him?**

**A. Yes.**

(Tr. at 81). Courts have made clear that pointing a firearm at an individual and firing it is sufficient for Felonious Assault under R.C. 2903.11(A)(2). *State v. Brooks*, 7th Dist. Mahoning No. 02-CA-251, 2004-Ohio-3216, ¶ 18.

{¶25} When considering the question of sufficiency of the evidence related to Felonious Assault, we are directed to look at the evidence in the light most favorable to the State. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The testimony of Kristina Owens that Jackson pointed a firearm directly at Jason and shot at him is sufficient to establish a Felonious Assault as charged in this matter. Although Jackson argues that there was no evidence beyond Owens' statement that he had a firearm at the scene of the crime, and that Owens' testimony was inconsistent and not credible, Owens' credibility is an issue for weight of the evidence rather than sufficiency.

{¶26} In sum, Owens' testimony, combined with the video footage, the shell casings at the scene, and the damage to Owens' windshield is sufficient to support a finding of guilt beyond a reasonable doubt on the Felonious Assault charge as alleged.

### Sufficiency of the Evidence Regarding the Firearm Specification, Carrying a Concealed Weapon, and Illegal Handling of a Firearm in a Motor Vehicle

**{¶27}** Jackson next argues that there was insufficient evidence to establish the firearm specification, his conviction for Carrying a Concealed Weapon, and for Illegal Handling of a Firearm in a Motor Vehicle.

**{¶28}** Regarding the concealed firearm, Owens testified that she did not see a weapon on Jackson when he got into her vehicle wearing a blue and white coat. However, she testified that in the parking lot of the Fourth Street apartments, Jackson pulled a firearm out of his pocket or his pants, pointed it at Jason, and fired at him. Owens' testimony was corroborated to an extent by the video footage, which showed Jackson seemingly pointing something at Jason. In addition, two shell casings were later located at the scene, and there was damage to Owens' windshield from a bullet fragment.

**{¶29}** All of this evidence is indicative of Jackson having a firearm concealed while he was in Owens' motor vehicle and ultimately using the firearm in the commission of the offense. Again, Jackson argues that Owens' testimony was not credible, and that she was inconsistent in her retelling of the incident, but this is an issue for weight of the evidence rather than sufficiency. Therefore, Jackson's arguments as to sufficiency of the evidence are not well-taken, and his

first assignment of error is overruled as sufficient evidence was presented to convict him of the alleged crimes.

### Manifest Weight of the Evidence

{¶30} Jackson next argues that even if there was sufficient evidence to convict him of the crimes as charged, his convictions were against the manifest weight of the evidence. In fact, Jackson contends that his convictions were "grossly" against the manifest weight of the evidence because the convictions were based primarily on the testimony of Kristina Owens and there were several factors that severely limited the reliability of her testimony.

{¶31} Specifically, Jackson argues that Owens' testimony was contradicted by her own prior inconsistent statements, including her prior sworn testimony at a preliminary hearing. Jackson argues that Owens made a number of statements at the preliminary hearing, and in her interview with Detective Stechschulte, that were inconsistent with her testimony at trial. He argues that Owens testified that she put her head down in her car because she heard gunshots, that she was on the phone during the shooting, and that she initially told Detective Stechschulte that she did not really see who fired the shots. Jackson also points to Owens' testimony at the preliminary hearing wherein she had stated that she did not believe that Jackson was aiming *at* Jason with his gun, and that she believed Jason also had a firearm.

{¶32} In addition, Jackson emphasizes that Owens testified that she could not hear what the argument was about between Jackson and Jason because she "wasn't really paying attention." (Tr. at 64). He also argues that the evidence other than Owens' testimony was "vague or uncertain" since the surveillance video did not show a firearm or a clear shooting, and since the shell casings did not match and were found in a high crime area known for multiple shootings.

{¶33} Regarding the credibility of Owens' testimony, Owens was thoroughly cross-examined as to her earlier statements in this case and she unequivocally testified at trial that Jackson argued with Jason outside of the vehicles in the parking lot, that Jackson pulled out a firearm, that he pointed it directly at Jason, and he fired the weapon at him. Moreover, on the witness stand, Owens was shown the video recording of the incident and she testified to what was happening as it played. Furthermore, on re-direct, Owens testified that she did not want to be involved in these proceedings, and that she told the truth at trial.

{¶34} Jackson argues that in "many ways" his case is similar to *State v. Shamblin*, 10th Dist. Franklin No. 93APA07-965, 1994WL109685, because Owens' credibility was so questionable in this matter. In *Shamblin*, the Tenth District Court of Appeals reversed a conviction where a defendant was convicted of Felonious Assault for actions in a bar fight, because there were serious questions as

to whether the defendant was the person who actually committed the crime rather than someone else.

{¶35} *Shamblin* has no relevance here because Owens clearly and unequivocally identified Jackson as the shooter, and Jackson was even found in her vehicle again days after the incident. This case is actually more similar to *State v. Brooks*, *supra*, wherein it was determined that the act of pointing a firearm at an individual and shooting it constitutes the "attempt to cause physical harm to another[.]" *Brooks* at ¶ 18; *see also State v. Mincy*, 1st Dist. Hamilton No. C-060041, 2007-Ohio-1316, ¶ 68 ("In cases involving firearms, evidence that the defendant discharged or tried to discharge a firearm is "strongly corroborative" of an intention to cause harm. [FN omitted] More subtly but similarly corroborative of an attempt to cause harm is evidence of an act of pointing a gun at someone, combined with a threat that would indicate the actor's intention to use the gun.").

{¶36} Finally, it is well-settled that credibility determinations are primarily for the trier-of-fact, and the trial court's guilty determinations on the charges in this case imply that the trial court found Owens credible, at least when combined with the video footage of the scene, the shell casings that were located there, and the damage to Owens' windshield caused by a bullet. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When combining all these pieces of evidence,

we cannot find that the trial court clearly lost its way in convicting Jackson of the charges in this matter.

**{¶37}** In sum, the standard of review directs this Court to reverse a conviction on manifest weight only when the evidence weighs heavily against conviction. *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119. After a review of the record and the exhibits presented, we cannot find that the trial court erred in this matter. Therefore, Jackson's second assignment of error is overruled.

*Conclusion*

**{¶38}** For the foregoing reasons, Jackson's assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/jlr**