[Cite as *State v. Maldonado*, 2021-Ohio-1724.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108907 |
| v. | : | |
| ELVIN MALDONADO, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** May 20, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634404-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet, Jaye Schlachet, and Eric M. Levy, *for appellant.*

ON RECONSIDERATION[1]

ANITA LASTER MAYS, P.J.:

{¶ 1} Pursuant to the App.R. 26 application for reconsideration filed by the state of Ohio, the opinion as announced on December 10, 2020, *State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, is hereby vacated and substituted with this opinion.

{¶ 2} Defendant-appellant Elvin Maldonado appeals from his convictions for felonious assault and discharge of a firearm on or near prohibited premises. He assigns the following errors for our review:

I.   The trial court erred when it entered a conviction and imposed a void sentence for a five-year drive-by shooting firearm specification for Count 8, discharge of a firearm on or near prohibited premises, a charge where the specification is not applicable.

II.  [Maldonado's] convictions were entered without sufficient evidence.

III. [Maldonado's] convictions were against the manifest weight of the evidence.

IV.  The trial court erred when it failed to instruct the jury on aggravated assault, an inferior offense to felonious assault, which was overwhelmingly supported by the testimony at trial.

V.   [Maldonado's] convictions are inconsistent within the same count and violate the United States and Ohio Constitutions and otherwise his right to due process of law where the jury's findings of not guilty on the firearm specifications within the same counts

---

[1] The original announcement of decision in *State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, released December 10, 2020, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C). *See also* S.Ct.Prac.R. 7.01.

as his underlying convictions and guilty findings on the drive-by shooting specifications make such convictions impossible.

VI. [Maldonado's] convictions must be vacated as a result of ineffective assistance of trial counsel.

VII. The trial court erred when it sentenced [Maldonado] to register as a violent offender under R.C. 2903.41, Sierah's Law which is contrary to law as not being applicable to any of [his] convictions.

{¶ 3} Having reviewed the record and the caselaw, including the state's acknowledgment that Maldonado's first assigned error is well-taken, we affirm and remand for resentencing. For convenience, we shall address the sixth assigned error last.

{¶ 4} Following a November 5, 2018 shooting, Maldonado was charged with attempted murder and two counts of felonious assault upon Carmen Rojas ("Rojas"), a total of four counts of felonious assault upon Kenny Rivera ("Rivera"), and minors A.S., J.S., and A.F., and discharge of a weapon on or near prohibited premises, all with one-year, three-year, and five-year "drive-by" firearm specifications. The case proceeded to a jury trial on May 22, 2019.

{¶ 5} Through an interpreter, Rojas testified that she lives in a duplex on Cloud Avenue in Cleveland. Maldonado is her former neighbor, but he moved prior to the shooting that is the subject of the trial. While they were neighbors, their families had been friendly. However, after Maldonado's dog bit Rojas's daughter's boyfriend, Maldonado's family was evicted from the duplex, and the families were no longer on good terms. On November 5, 2018, Rojas's son, Rivera, his girlfriend, A.S., Rojas's daughter, J.S., and her granddaughter, A.F., were with Rojas at her

home. According to Rojas, at approximately 3:45 p.m., a woman associated with Maldonado drove a young man to her home and gave him eggs. The young man threw the eggs at Rojas's car and her house, then the woman threatened Rojas before leaving.

{¶ 6} Rojas subsequently asked Rivera, A.S., and J.S. to go to the store for her. The group walked to the nearby Q's Gas Station. When they arrived at the gas station, they spotted Maldonado in a white truck, and his son and another boy near the gas pumps. Rivera confronted Maldonado's son and the other boy about egging Rojas's home. As Maldonado emerged from the truck, he ordered his son and the other boy to get into the truck. At that point, Rivera and Maldonado began to fight. After the fight was broken up by others at the gas station, Maldonado returned to his truck, threatened retaliation, and briefly followed Rivera, A.S., and J.S. as they returned to Rojas's home. According to A.S., Rivera, who was on parole, was unarmed. A.S. also testified that she did not see Maldonado with a weapon.

{¶ 7} Rivera and the others returned to Rojas's home and stood outside with Rojas and A.F. Approximately fifteen to twenty minutes later, a white F-150 truck arrived, and the driver began shooting, striking Rojas in the neck. Other shots were fired toward the backyard. Rojas told police officers who responded to the scene that Maldonado was the assailant. She testified that she saw Maldonado in the truck immediately before the shooting. A.S. and J.S. testified that Maldonado was the shooter. Rojas testified that the shooting occurred while the truck was in her driveway. She also testified that she was hospitalized after the shooting and has

lingering dexterity problems from her injuries. A.S. testified that the white truck was partially in the driveway and partially on the street when the shooting occurred.

{¶ 8} Cleveland Officer Jonathan Holub ("Officer Holub") testified that he went to Maldonado's home to question him about the shooting. Maldonado was not there, but a white truck registered to Maldonado's father was in the yard. According to Officer Holub, the truck's hood was warm, indicating that it had recently been driven. Maldonado's father told Officer Holub that Maldonado had used the truck before driving to work in another vehicle. He also consented to a search of the truck. No fingerprints, gun, or shell casings were recovered from the white truck. However, a .22 caliber rimfire cartridge was recovered from the street in front of Rojas's house. It was not established that the cartridge had "cycled through a firearm" or had simply been dropped.

{¶ 9} Cleveland Police Detective Cynthia Moore ("Det. Moore") testified that she spoke with Maldonado at his job at a nearby deli. According to Det. Moore, Maldonado stated that he fought Rivera after Rivera confronted his son and the other boy about the egging incident. Maldonado stated that he was bloodied during this fight and that Rivera had a weapon. Maldonado was arrested at the deli.

{¶ 10} Proceeding with the defense, Maldonado's mother testified that just before 4:00 p.m., Maldonado drove in the white truck registered to Maldonado's father and began looking for his son and the other child who had not yet returned from school. Maldonado returned home approximately fifteen to twenty minutes later. At that point, he was bloodied and suffering from an asthma attack. He asked

her to drive him to work, then changed his mind, and decided to drive her car after parking his truck in the backyard.

{¶ 11} Maldonado's son testified that he and the other boy walked home from school and stopped at the gas station. At the gas station, Rivera confronted him about the egging incident. When Maldonado exited his truck, Rivera punched him in the eye and put him in a choke hold. During the fight, a gun fell from Rivera's waistband, and one of the minors with him picked it up and then walked toward Cloud Avenue. Maldonado's son testified that Maldonado lost the fight with Rivera. After the fight, Maldonado was "the maddest [he] had ever seen him" and breathing like he was having an asthma attack. Maldonado's son decided to give Maldonado space after the fight. He watched as Maldonado drove off past Cloud Avenue and past a nearby cemetery. When the son arrived home, Maldonado's truck was already parked in the backyard.

{¶ 12} San Pedro Garcia ("Garcia"), a friend of Maldonado, testified that on the afternoon of the shooting, he was at laundromat near the gas station and spoke briefly with Maldonado. A few minutes later, he saw Maldonado and Rivera arguing. Garcia testified that Rivera threw the first punch and generally got the better of Maldonado during the fight. Garcia also testified that he saw a gun fall from Rivera's waist during the fight. At that point, Maldonado instructed his son and the other child to flee, and a black-haired girl with Rivera picked up the weapon.

{¶ 13} Maldonado testified that he received a Facebook call warning him that Rivera was about to start trouble with his son at the gas station. Maldonado got

into the truck and headed toward the gas station. When he arrived, he told Rivera to deal with him and not the children. According to Maldonado, Rivera was the aggressor of the ensuing fight, and punched him in the eye as he exited the truck. As they fought, Rivera's gun fell to the ground, and Maldonado told his son and the other boy to run. Afterward, when Maldonado was driving away, Rivera warned Maldonado that he was going to shoot them, and Maldonado began suffering an asthma attack. According to Maldonado, he experiences asthma attacks when he is extremely stressed. Maldonado denied involvement in the shooting.

{¶ 14} Maldonado further testified that he did not drive the white truck to his job at the deli because the plates were expired, and it had a burned out blinker light. He parked the truck in the backyard when he arrived home so that it would not be damaged by neighborhood vandals. Maldonado stated that when police later confronted him at his job at the deli, he was frightened and mistakenly stated that he had previously been driving a different vehicle, and not the white truck.

{¶ 15} Maldonado was acquitted of attempted murder and all of the one-year and three-year firearm specifications, but he was convicted of all remaining charges. The trial court merged the felonious assault charges involving Rojas with the count of discharging a weapon on or near prohibited premises. The court sentenced Maldonado to serve a five-year term for the drive-by firearm specification and a four-year term on the merged offenses, and to concurrent nine-year terms on the remaining offenses.

## Applicability of R.C. 2941.146 Specification to Discharge of Firearm on or Near Prohibited Premises

{¶ 16} In the first assigned error, Maldonado asserts that the R.C. 2941.146 five-year "drive-by" firearm specification is not applicable to a charge of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162. He argues that R.C. 2941.146 applies only to felonies that include, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, but R.C. 2923.162 is a strict liability offense that contains the element of "serious physical harm," but not "physical harm."

{¶ 17} The state of Ohio concedes this error. Likewise, we note that R.C. 2941.146 provides for a mandatory five-year prison term for offenders who commit "a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another[.]" *See State v. Peoples*, 10th Dist. Franklin No. 18AP-850, 2019-Ohio-2141, ¶ 11. R.C. 2923.162 does not contain the mens rea of "purposely," and is instead a strict liability offense. *See State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 33 (8th Dist.). Therefore, the five-year drive-by specification is not applicable to this offense. Accordingly, we conclude that this assigned error is well taken. Inasmuch as this well-taken argument is dispositive of the assigned error, we do not reach Maldonado's second argument that the five-year specification is inapplicable to a charge of discharge of a firearm on or near prohibited premises because

R.C. 2923.162 contains the element of "serious physical harm" rather than "physical harm."

### Sufficiency of the Evidence

{¶ 18} In the second assigned error, Maldonado argues that his convictions are not supported by sufficient evidence. He asserts that there is no evidence that the shooting was committed with a firearm as opposed to a BB gun or pellet gun. He also asserts that the state's evidence indicated that the shooting occurred from a private driveway, and not a public road or highway as required under R.C. 2923.162. He additionally argues that the felonious assault convictions are not supported due to lack of evidence that the shooter "even shot in the direction of the * * * victims so as to knowingly expect to cause physical harm."

{¶ 19} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence, but whether, if credible, the evidence presented would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *following*, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991).

Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32.

{¶ 20} Turning to the conviction for discharge of a firearm on or near prohibited premises, the state's evidence indicated that Rojas's family experienced ongoing problems from Maldonado's family after the dog-bite-related eviction. The record demonstrates that Rivera and Maldonado got into a physical fight at the gas station immediately after Rojas's house and car were egged. According to Rivera, Maldonado threatened retaliation. About fifteen to twenty minutes after the fight with Rivera at the gas station, while Rojas and her family were in the driveway, Maldonado was observed in the white truck during the shooting. Rojas was struck in the neck. As to Maldonado's argument that no eyewitness testimony places him at the scene, both Rojas and A.S. observed him in the white truck during the shooting. A.S. identified Maldonado in a photo array and again in court as the assailant.

{¶ 21} Maldonado also complains that there is insufficient evidence to support of discharge of firearm on or near prohibited premises under R.C. 2923.162 because Rojas testified that the shooter was in her driveway, so she did not establish that he discharged a firearm upon or over a public road or highway. We agree that Rojas testified that the shooter was positioned in the driveway, and not on a public road as required under R.C. 2923.162. However, A.S. testified that Maldonado was

in the white truck and that it was positioned partially on the driveway and partially on the road. The cartridge was discovered on the street, not the driveway. As to Maldonado's claim that there was insufficient evidence that his shots came from a firearm, as opposed to a BB gun, Rojas and A.S. testified that they heard shots, and the state's evidence indicated that a .22 caliber cartridge was recovered from the street.

{¶ 22} There is sufficient evidence to support this conviction.

{¶ 23} We conclude that the felonious assault convictions are supported by sufficient evidence. Felonious assault as defined in R.C. 2903.11(A) states, "no person shall knowingly * * * cause serious physical harm to another * * *." Eyewitnesses state that Maldonado pointed a firearm and fired it, striking Rojas in the neck. Courts have made clear that pointing a firearm at an individual and firing it is sufficient for felonious assault under R.C. 2903.11(A)(2). *State v. Brooks*, 7th Dist. Mahoning No. 02-CA-251, 2004-Ohio-3216, ¶ 18. *State v. Jackson*, 3d Dist. Allen No. 1-18-38, 2019-Ohio-1697, ¶ 24.

{¶ 24} This analysis is also applicable herein, and we additionally note that Rojas was struck in the neck during the shooting. Accordingly, this portion of Maldonado's assigned error lacks merit. As to Maldonado's claim that there was insufficient evidence that the shots came from a firearm, as opposed to a BB gun, Rojas and A.S. testified that they heard shots, and the state's evidence indicated that a .22 caliber cartridge was recovered from the street.

{¶ 25} This assigned error is without merit.

**Manifest Weight of the Evidence**

{¶ 26} In the third assigned error, Maldonado argues that his convictions are against the manifest weight of the evidence. He raises many of the same arguments that he previously raised in his sufficiency challenge. He also asserts that the witnesses presented by the state were biased, not credible, and made conflicting and inconsistent claims.

{¶ 27} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at 387. Weight of the evidence concerns "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 28} Furthermore, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio

St.3d 120, 123, 489 N.E.2d 277 (1986). The factfinder "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶ 29} Upon review, we cannot say that the jury lost its way and created a manifest miscarriage of justice by convicting Maldonado of discharging a weapon over prohibited premises. The record indicates that there was ongoing conflict between Rojas's family and Maldonado's family after Maldonado's eviction. On the day of the shooting, while Rojas and her other family members were outside, Maldonado, from a position within the street but near the driveway, was seen shooting at the house, striking Rojas in the neck. From the foregoing, we cannot say that the jury lost its way or created a manifest miscarriage of justice in convicting Maldonado of the offense.

{¶ 30} The third assigned error is without merit.

### No Aggravated Assault Instruction

{¶ 31} In the fourth assigned error, Maldonado argues that the trial court erred in failing to instruct the jury on the offense of aggravated assault, as a lesser included offense of felonious assault. He maintains that there was evidence that he had both serious provocation and actual sudden passion and a fit of rage, and that the events occurred within minutes of each other and in an extremely close geographical proximity.

{¶ 32} We first note that trial counsel did not object to the trial court's failure to instruct the jury on the offense of aggravated assault. We therefore review for

plain error. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 196, 749 N.E.2d 274 (2001). *State v. Wright*, 2017-Ohio-1225, 88 N.E.3d 487, ¶ 26 (6th Dist.). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Hill* at 196. Since substantial rights are in jeopardy, "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice * * *." *State v. White,* 10th Dist. Franklin No. 15AP-565, 2016-Ohio-1405, ¶ 44.

{¶ 33} As defined in R.C. 2903.12, aggravated assault is an inferior degree of felonious assault "since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988). The difference between the elements of aggravated and felonious assault is provocation involving sudden passion or fit of rage. *State v. McDuffie*, 8th Dist. Cuyahoga No. 100826, 2014-Ohio-4924, ¶ 22.

{¶ 34} In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. *Deem* at paragraph four of the syllabus. A defendant must show that he or she acted under serious provocation. *Id.* at ¶ 23-24. "'Provocation, to be serious,

must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.'" *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, ¶ 43 (1st Dist.), quoting *State v. Horton*, 9th Dist. Summit No. 26407, 2013-Ohio-3902, ¶ 52. R.C. 2903.12 also states that a defendant must act "while under the influence of sudden passion or in a sudden fit of rage."

{¶ 35} In *State v. Mack*, 82 Ohio St.3d 198, 1998-Ohio-375, 694 N.E.2d 1328, the Ohio Supreme Court reiterated that an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage, meaning that the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 201. If this objective standard is met, then the inquiry shifts to a subjective standard to determine whether the defendant in the particular case "'actually was under the influence of sudden passion or in a sudden fit of rage.'" *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992).

{¶ 36} In *State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, this court explained:

> Courts have found that an instruction on aggravated assault is not warranted when defendants fail to provide evidence that they acted while under the influence of sudden passion or in a sudden fit of rage. *Compare State v. Walker*, 2d Dist. Montgomery No. 25741, 2014-Ohio-1287, ¶ 7 (appellant testified that he "was never angry" and only scared, so counsel was not deficient for failing to request instruction on aggravated assault); *Horton[*, 9th Dist. Summit No. 26407, 2013-Ohio-3902,] at ¶ 53 (appellant only testified that he "feared for the safety of [another,]" which was not enough to warrant aggravated assault

instruction); *Crim*, 8th Dist. Cuyahoga No. 82347, 2004-Ohio-2553, at ¶ 13-14 (because the appellant (1) failed to demonstrate that he was provoked by the victims' actions, (2) testified that he was not in a fit of rage, and (3) said he "was not angry and was cool, calm and collected" when he shot at the victims, the trial court did not err in failing to instruct the jury on aggravated assault) with *State v. Bostick*, 9th Dist. Summit No. 25853, 2012-Ohio-5048, ¶ 10-13 (appellant testified that he "flipped and saw red," which was evidence that the appellant was under the influence of sudden passion or a fit of rage); *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, ¶ 55-57 (1st Dist.) (testimony showed that defendant "looked angry and upset" and indicated that defendant's anger "escalated into rage, terror, or furious hatred" so the trial court should have instructed the jury on aggravated assault as to one of the shootings that defendant allegedly committed).

*Id.* at ¶ 50.

{¶ 37} However, past altercations and past verbal threats do not satisfy the test for sufficient provocation where there is sufficient time for cooling off. *Smith* at ¶ 48.

{¶ 38} In this matter, Maldonado's son testified that Maldonado was extremely angry following the fight with Rivera. There is also evidence that Maldonado was concerned about his asthma following the fight. However, Maldonado testified, "I was mad. I wasn't like fiery mad. I was just — I was more concerned and upset." He also denied gripping the steering wheel in the angry fashion described by his son.

{¶ 39} Additionally, we note that the record indicates that the shooting occurred approximately fifteen to twenty minutes after the fight at the gas station. This time period has been deemed sufficient for cooling off. *See State v. Patterson*, 10th Dist. Franklin No. 15AP-1117, 2016-Ohio-7130, in which the court stated:

Courts have indicated that a cooling off period may be a "very short time span." *State v. Caulton*, 7th Dist. [Mahoning] No. 09 MA 140, 2011-Ohio-6636, ¶ 70, *discretionary appeal not allowed*, 131 Ohio St.3d 1500, 2012-Ohio-1501, 964 N.E.2d 440, quoting *State v. Kanner*, 7th Dist. [Monroe] No. 04 MO 10, 2006-Ohio-3485, *discretionary appeal not allowed*, [*State v. Kanner*], 111 Ohio St.3d 1493, 2006-Ohio-6171, 857 N.E.2d 1230. *See, e.g., Parnell* at ¶ 24 (15-minute period that defendant went upstairs after alleged argument a sufficient cooling off period such that aggravated assault jury instruction was not warranted); *State v. Nowden*, 2d Dist. [Clark] No. 07CA0120, 2008-Ohio-5383, ¶ 59 (10-to 15-minute period defendant left residence to get a gun sufficient cooling off period); *State v. Dean*, 4th Dist. [Ross] No. 15CA3499, 2016-Ohio-5720, ¶ 27 (time it took for victim to exit house and walk down the driveway approximately 100 yards away from defendant sufficient cooling off period); *State v. Byerly*, 5th Dist. [Richland] No. 02-CA-81, 2003-Ohio-6911, ¶ 36, *discretionary appeal not allowed*, 102 Ohio St. 3d 1424, 2004-Ohio-2003, 807 N.E.2d 368 (time it took defendant to park his car one-half mile away from victim's residence and walk back constituted cooling off period); *State v. Shakoor*, 7th Dist. [Mahoning] No. 01 CA 121, 2003-Ohio-5140, ¶ 105 (recognizing that in certain circumstances a few seconds may constitute a sufficient cooling off period).

*Id.* at ¶ 40.

{¶ 40} In this matter, in light of Maldonado's testimony and the sufficient time for cooling off, the evidence did not support a finding that the shooting was mitigated by serious provocation, and the trial court did not err in refusing to instruct the jury on the offense of aggravated assault.

{¶ 41} Finally, we find that Maldonado pursued a complete defense strategy rather than invite a conviction of an inferior offense based on evidence of provocation. While his trial counsel requested certain other lesser offense instructions, he did not request an instruction on the inferior offense of aggravated assault, which indicates both his trial strategy and how he viewed the evidence.

Requesting an instruction on the inferior offense of aggravated assault would have been inconsistent with Maldonado's complete-defense strategy and his testimony that he was not at the shooting and was not "fiery mad" before the shooting. That the trial court chose not to instruct on the inferior offense sua sponte indicates that the court similarly did not consider the evidence sufficient to support a finding of provocation.

{¶ 42} Maldonado's trial counsel did not seek an instruction on aggravated assault and the trial court did not attempt to instruct on the inferior offense. Finding plain error under these circumstances would hold the trial court responsible for Maldonado's deliberate decision to not pursue an instruction on the inferior offense and permit Maldonado to retroactively benefit from a strategy he declined to pursue.

{¶ 43} Accordingly, we find that the trial court did not commit plain error in failing to instruct on the inferior offense. *See State v. Clayton*, 62 Ohio St.2d 45, 47-48, 402 N.E.2d 1189 (1980) (no plain error for failure to instruct on lesser-included offense where the defendant pursued a complete defense and waived a lesser-included offense instruction). *See also State v. McCullough*, 8th Dist. Cuyahoga No. 67786, 1995 Ohio App. LEXIS 3377, *6 (Aug. 17, 1995); *State v. Lockett*, 8th Dist. Cuyahoga No. 53334, 1988 Ohio App. LEXIS 534, 8-10 (Feb. 18, 1988); *State v. Brown*, 8th Dist. Cuyahoga No. 52593, 1988 Ohio App. LEXIS 3020, *5-6 (July 28, 1988); *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 45; *State v. Glagola*, 5th Dist. Stark No. 2003CA00006, 2003-Ohio-6018, ¶ 22.

{¶ 44} The fourth assigned error lacks merit.

**Inconsistent Verdicts**

{¶ 45} In the fifth assigned error, Maldonado contends that the acquittals on the one-year and three-year firearm specifications are inconsistent with both the conviction for discharging a firearm in violation of R.C. 2923.162 and the five-year "drive-by" firearm specifications.

{¶ 46} "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1979), paragraph one of the syllabus.

{¶ 47} With regard to the contention that the acquittals on the one-year and three-year firearm specifications are fatally inconsistent with the convictions on the principal offenses, this court recently observed in *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503 (8th Dist.):

> Amey relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), in support of his inconsistent-verdicts argument. In that case, the Ohio Supreme Court held that an acquittal on a gun specification but the finding of guilt on the principal offense of voluntary manslaughter for causing the death of a victim with the firearm were inconsistent, and therefore, the voluntary manslaughter conviction was reversed. There was no legal authority or analysis in support of the conclusion reached in that case. *Koss*, in fact, contradicted the Ohio Supreme Court's earlier conclusion on inconsistency between the principal charge and the associated specification. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040, paragraph 3 of the syllabus (1976) ("Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.").

Although some courts valued *Koss* based on recency, that support has faded. *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 73-75, citing *Perryman* (noting the conflict created by *Koss* and deeming the decision in *Koss* to be of limited value); *see also State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 43; *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 24. It may be time to consider *Koss* as nothing more than an outlier; however, any such conclusion would be outside the scope of this appeal.

*Id.* at ¶ 17-18.

{¶ 48} Moreover, this court has consistently held that a not guilty verdict on firearm specifications does not present a fatal inconsistency with a guilty verdict for the principal charge. *State v. Hollins*, 8th Dist. Cuyahoga No. 107642, 2020-Ohio-4290, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 105541, 2018-Ohio-2131, ¶ 8; *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483; *State v. Hardware*, 8th Dist. Cuyahoga No. 93639, 2010-Ohio-4346, ¶ 17, citing *State v. Fair*, 8th Dist. Cuyahoga No. 89653, 2008-Ohio-930; *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375. As this court explained in *Fair*, "[i]t is entirely proper for the jury to find appellant guilty of aggravated robbery without a firearm specification." *Id.* at ¶ 26. In *Robinson*, this court further explained:

Robinson argues that based upon the Ohio Supreme Court's holding in *State v. Evans*, 113 Ohio St.3d 100, 2007-Ohio-861, 863 N.E.2d 113, [stating that completely dependent upon, the existence of the underlying criminal charge] a firearm specification is considered dependent on the underlying charge, and thus the two should be considered the same count. This court, however, has consistently rejected this argument. * * *.

Here, the evidence supported the felony murder, felonious assault, and the discharge of a firearm on or near a prohibited place, the court instructed on the specifications independently and separately, and the convictions on these counts were not dependent upon a finding on the

specifications. Accordingly, consistent with this court's precedent, we overrule the tenth assignment of error.

*Robinson*, 2013-Ohio-4375, ¶ 102-103.

{¶ 49} Therefore, the acquittals on the specifications are not fatally inconsistent with the convictions for the principal offenses.

{¶ 50} Maldonado further argues that the convictions on the five-year specification for discharging a firearm from a motor vehicle is fatally inconsistent with the acquittals on the one-year and three-year firearm specifications. However, as the court in *State v. Crabtree*, 10th Dist. Franklin No. 09AP-1097, 2010-Ohio-3843, explained, "[a]s long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id.* at ¶ 19. "A jury need not deliver rationally consistent verdicts in order for the verdicts to be upheld. * * * As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id. See also State v. Smith*, 10th Dist. Franklin No. 06AP-1165, 2007-Ohio-6772, ¶ 42. Here, we conclude that the evidence supports the fire-year firearm specifications. Moreover, under the evidence presented, it was entirely rational for the jury to have selected the fire-year firearm specification that specifically references the discharge of a firearm from a motor vehicle.

{¶ 51} This assigned error is without merit.

**Sierah's Law**

{¶ 52} In the seventh assigned of error, Maldonado argues that the trial court erred in sentencing him under Sierah's Law and requiring him to register as a violent offender.

{¶ 53} Pursuant to R.C. 2903.41, individuals who are convicted of certain violent offenses must register in the Violent Offender Database. Qualifying violent offenses are aggravated murder in violation of R.C. 2903.01; murder in violation of R.C. 2903.02; voluntary manslaughter in violation of R.C. 2903.03; kidnapping in violation of R.C. 2905.01; and second-degree felony abduction in violation of R.C. 2905.02. Attempt, complicity, and conspiracy to commit these offenses are likewise included as qualifying offenses.

{¶ 54} Here, the state concedes that Sierah's Law is inapplicable to Maldonado. Upon our review, we agree that Sierah's law is inapplicable in this matter because Maldonado was not convicted of a qualifying offense.

{¶ 55} This assigned error is well taken.

**Ineffective Assistance of Counsel**

{¶ 56} In the sixth assigned error, Maldonado argues that he received ineffective assistance of counsel at his trial. He complains that his trial counsel did not seek the dismissal of the five-year firearm specification, did not argue for an instruction on the lesser offense of aggravated assault, ineffectively advocated for the lesser offense of improperly handling a firearm in a motor vehicle, and did not challenge application of Sierah's Law during sentencing.

{¶ 57} In order to establish a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, a defendant must also demonstrate that he or she was prejudiced by counsel's performance. *Id.* To show that he or she has been prejudiced by counsel's deficient performance, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus.

{¶ 58} Herein, the claim regarding the inapplicability of the five-year firearm specification for discharging a firearm from a motor vehicle to the charge of discharge of a firearm on or near prohibited premises is now moot, in light of this court's disposition of the first assigned error.

{¶ 59} Turning to the next portion of the assigned error regarding the instruction for aggravated assault, we note that Maldonado's counsel did advocate for an instruction on a lesser charge and repeatedly elicited questions designed to probe Maldonado's state of mind during and after the fight with Rivera. (Tr. 942.) Therefore, we find no trial error as required under the first component of the *Strickland* analysis. This portion of the assigned error lacks merit.

{¶ 60} Turning next to Maldonado's complaint challenging the efficacy of his trial counsel's argument for a lesser instruction of improperly handling a firearm in a motor vehicle, the evidence did not indicate that Maldonado simply discharged a

weapon or improperly transported it within R.C. 2923.16. Rather, the evidence demonstrated that there were continuing problems between Maldonado's family and Rojas's family, multiple shots were fired following the fight with Rivera, and one of the shots struck Rojas in the neck. Therefore, counsel could have reasonably concluded that additional argument would have been futile. This portion of the assigned error lacks merit.

{¶ 61} Finally, the argument regarding Sierah's law is moot. App.R. 12(A)(1)(c).

{¶ 62} The sixth assigned error is without merit.

{¶ 63} Judgment affirmed. The conviction for discharge of a firearm on or near prohibited premises is affirmed but remanded for resentencing.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY